753 So.2d 653 (2000)
HOME FURNITURE DEPOT, INC., a Florida corporation, Appellant,
v.
ENTEVOR AB, a Swedish corporation, Lee Blackwell, Jennifer Blackwell, Carrie Blackwell, Sit and Sleep, Inc., a Florida corporation, and Perry W. Hodges, Jr., Appellees.
No. 4D99-727.
District Court of Appeal of Florida, Fourth District.
March 8, 2000.
Warren P. Gammill and Carlos Nunez-Vivas of Law Office of Warren P. Gammill, Miami, for appellant.
A. Thomas Connick of A. Thomas Connick, P.A. and Boutwell & Connick, Deerfield Beach, for Appellee-Perry W. Hodges, Jr.
OWEN, WILLIAM C., Jr., Senior Judge.
Home Furniture Depot, Inc., ("HFD") plaintiff[1] in this legal malpractice case against its lawyer, Perry W. Hodges, Esq., ("Hodges"), appeals from a summary judgment entered in favor of the defendant lawyer. We reverse and remand for further proceedings.
The relevant facts[2] are as follows: in May, 1997, before Hodges became involved, *654 HFD was incorporated with its principal business being to set up and operate a retail furniture store. At all relevant times, 50% of its outstanding common stock was owned by Entevor AB ("Entevor"), a Swedish corporation, and Entevor's principal, Mr. Lennart Falk, was a director and the vice-president of HFD. The other stockholders, directors, and officers were Mr. Lee Blackwell, who owned 35% of HFD's stock and was its President, and his daughter, Ms. Jennifer Blackwell, who owned the remaining 15% of the stock and was its Secretary-Treasurer. Entevor was the money source, the $300,000 which it paid for its 50% stock interest constituting over 99% of the entire capital of HFD. Lee Blackwell and Jennifer Blackwell were in charge of the day-to-day operation of the business.
After HFD had been in business only a few weeks, Ms. Blackwell consulted Hodges on how to replace HFD's resident agent and how to resolve a problem with the corporation's federal employer identification number. Hodges, fully aware that HFD was then actively engaged in its business, advised Ms. Blackwell that it would be easier and cost less money if she were simply to form a new corporation rather than make the necessary amendments to the existing corporate documents. Acting on that advice, Ms. Blackwell delivered HFD's corporate book to Hodges so that he could set up the new corporation exactly the same as HFD. Hodges then proceeded to have incorporated a new entity, Sit & Sleep, Inc., and issued its outstanding common stock50% to Entevor, 35% to a Carrie Blackwell[3], and 15% to Jennifer Blackwell. However, Hodges failed to advise the officers of HFD that under existing Florida law[4] a corporation may legally dispose of all, or substantially all, of its property otherwise than in the usual course of business, only by following certain statutory requirements. The requirement of primary significance in this case is the approval by a majority of the stockholders of the corporate transferor.[5]See § 607.1202, Fla. Stat. (1997).
Prior to October 3, 1997, Lee Blackwell and Jennifer Blackwell transferred all of HFD's corporate bank accounts (which constituted all or substantially all of HFD's assets) to Sit & Sleep, Inc. That action was taken without any formal resolution of HFD's Board, without notice of a shareholders' meeting to vote on a transfer of all or substantially all of its assets otherwise than in the usual and regular course of business and, most importantly, without the approval of a majority vote of its stockholders. Not until October 3, 1997, did Entevor and Lennart Falk learn of the existence of Sit & Sleep, Inc., and of the transfer to it of HFD's bank accounts. Entevor and Falk promptly made known to the Blackwells their objection to this transfer of HFD's bank accounts, demanded that the bank accounts be returned to HFD, and consistently refused to accept stock ownership in Sit & Sleep, Inc. Likewise, Falk refused to accept any position with or participate in Sit & Sleep, Inc., which, lamentably, went under soon after.
In entering summary judgment for Hodges, the court concluded that because Hodges did not participate in, aid, or advise the transfer of HFD's bank accounts to Sit & Sleep, Inc., nor did he have any knowledge concerning such transfer[6], *655 Hodges had no duty to HFD concerning a transfer of its assets made by others. Thus, the court reasoned, Hodges having no duty in that respect, his conduct could not have been the proximate cause of any loss sustained by HFD.
We find the court's conclusion to be erroneous because the facts upon which it was premised, i.e., that Hodges neither participated in nor advised HFD concerning the transfer of HFD's assets, nor did he have knowledge of when or how the transfer of HFD's assets to Sit & Sleep, Inc., would occur, are simply not relevant to the issue in this case. Appellant's claim of Hodges' neglect of duty is not that he participated in or advised the transfer of his corporate client's bank accounts; rather, it is that Hodges, having knowledge that his corporate client intended to transfer all, or substantially all, of its assets other than in the regular course of business, failed in his duty to advise the client of the statutory requirements that must be met in order to obtain corporate consent to such a transfer of assets.
A lawyer owes to the client a duty to exercise the degree of reasonable knowledge and skill which lawyers of ordinary ability and skill possess and exercise. See Stake v. Harlan, 529 So.2d 1183, 1185 (Fla. 2nd DCA 1988). When consulted, Hodges recommended forming a "new" corporation, as a less costly means of curing the problems faced by HFD. One reasonable inference to be drawn from such a recommendation, if not indeed the only one[7], is that it necessarily contemplated all of HFD's assets being transferred to the "new" corporation otherwise than in the usual and regular course of business. Certainly, the fact-finder could so conclude. Such a transfer of assets cannot be separated from the need for it to be accomplished in the manner required by statute. We hold, therefore, that a lawyer, having knowledge that his corporate client intends to dispose of all, or substantially all, of its assets other than in the usual and regular course of business, has a duty to advise that client of any statutory requirements that must be met in order to obtain corporate consent to such disposition of assets.
A plaintiff in a legal malpractice action must prove (1) the employment of the lawyer, (2) the lawyer's neglect of a reasonable duty, and (3) that the lawyer's neglect was a legal cause of loss to the client. See Lenahan v. Russell L. Forkey, P.A., 702 So.2d 610, 611 (Fla. 4th DCA 1997). Because reasonable inferences may be drawn from the evidence before the court to support each of these elements, it was error to enter a summary judgment for the defendant lawyer. We reverse the final summary judgment and remand to the trial court for further proceedings consistent herewith.
Reversed and remanded.
GUNTHER and GROSS, JJ., concur.
NOTES
[1] The suit was initially filed as a stockholder's derivative action in which Home Furniture Depot, Inc., was named as a defendant. In due course the parties were realigned with the corporation as the plaintiff.
[2] Because the court granted defendant's motion for summary judgment, the "facts" are stated from a view of the evidence most favorable to the plaintiff. See Moore v. Morris, 475 So.2d 666, 668 (Fla.1985).
[3] In addition to becoming a stockholder in the "new" corporation in lieu of Lee Blackwell, Carrie Blackwell also was named one of the three directors as well as the President.
[4] § 607.1202(1), Fla. Stat. (1997); see Schwadel v. Uchitel, 455 So.2d 401, 403 (Fla. 3d DCA 1984).
[5] Whether Hodges' failure to advise the corporate officers in this respect was a legal cause of loss to the plaintiff remains a factual issue.
[6] The court's conclusion is this respect must be taken to mean that Hodges had no knowledge of when, or the mechanics of how, the transfer of HFD's assets to Sit & Sleep, Inc., would occur.
[7] One could reasonably infer that such objective was in fact the very raison d'etre for the "new" corporation.