850 So.2d 474 (2003)
John C. ROWELL, Petitioner,
v.
Julianne M. HOLT, Respondent.
No. SC01-2010.
Supreme Court of Florida.
June 26, 2003.
*475 Theodore "Ted" E. Karatinos of Seeley & Karatinos, P.A., St. Petersburg, Florida; and James W. Holliday of Prugh, Holliday & Deem, P.L., Tampa, FL, for Petitioner.
Todd W. Vraspir of Papy, Weissenborn, Poole & Vraspir, P.A., Spring Hill, FL, for Respondent.
Joseph W. Little, Gainesville, Florida; Robert C. Widman, Venice, Florida; and Robert V. Potter, Jr., Clearwater, FL, for Ernest Morgan and Beverly Keehnle, Amici Curiae.
LEWIS, J.
We have for review a decision of a district court of appeal on the following question, which the court certified to be of great public importance:
DOES THE IMPACT RULE APPLY TO PROHIBIT THE RECOVERY OF NONECONOMIC DAMAGES IN A LEGAL MALPRACTICE CLAIM WHEN THE NEGLIGENCE OF A CRIMINAL DEFENSE ATTORNEY RESULTS IN A LOSS OF LIBERTY AND RESULTING EMOTIONAL OR PSYCHOLOGICAL HARM?
Holt v. Rowell, 798 So.2d 767, 773 (Fla. 2d DCA 2001). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. Because we believe the instant case presents a unique factual scenario deserving of an equally tailored principle of law, we rephrase the certified question as follows:
IN AN ACTION FOR LEGAL MALPRACTICE, DOES THE IMPACT RULE PRECLUDE RECOVERY OF NONECONOMIC DAMAGES WHEN THE UNCONTROVERTED NEGLIGENT FAILURE TO DELIVER A *476 DOCUMENT THAT WOULD HAVE PRODUCED THE IMMEDIATE RELEASE OF A PRETRIAL DETAINEE RESULTED IN A PROTRACTED PERIOD OF WRONGFUL PRETRIAL IMPRISONMENT WITH RESULTANT EMOTIONAL DISTRESS OR PSYCHOLOGICAL HARM, BUT NO PHYSICAL IMPACT?
For the following reasons, we answer the rephrased certified question in the negative. We therefore quash that portion of the district court's decision reversing the jury award of damages for psychological injury, and remand the case for reinstatement of the award of noneconomic damages. 
BACKGROUND AND FACTS
The facts underlying the instant action, exhaustively well detailed in the district court's decision below, are as follows:
In May 1995, John Rowell sold two firearms to a pawnshop. Based upon these sales, Mr. Rowell was arrested on July 6, 1995, in Marion County, Florida, for two counts of felon in possession of a firearm. In fact, Mr. Rowell was innocent of these charges. Although Mr. Rowell had been convicted of a felony in 1966 when he was 22 years of age, he had received a restoration of his civil rights on June 18, 1975. Mr. Rowell was unable to convince the arresting officers that he was innocent of the crimes charged. He was transported to the Hillsborough County Jail, where he remained overnight until his first appearance hearing scheduled for the following morning, July 7, 1995.
In the Thirteenth Judicial Circuit, preliminary presentation hearings are often performed via closed circuit television. The defendants are physically located at the jail, and an assistant public defender is assigned to this location. A second assistant public defender is present in the courtroom with the presiding judge and the assistant state attorney.
At Mr. Rowell's preliminary presentation hearing on the morning of Friday, July 7, an assistant public defender at the jail spoke with Mr. Rowell, and Mr. Rowell signed an affidavit of indigency and an invocation of rights, thus establishing an attorney-client relationship with the Office of the Public Defender. Mr. Rowell had in his possession a document indicating that his civil rights had been restored. When the trial judge called Mr. Rowell's case, Mr. Rowell told the trial judge directly that he had proof of the restoration of his civil rights and held up the document. Because the trial judge could not see the contents of the document, the trial judge instructed the assistant public defender to obtain a copy of that document so that the case could be resolved if Mr. Rowell was indeed permitted to possess a firearm. On the videotape of this event, Mr. Rowell can be seen handing the document to the assistant public defender at the jail. It is not clear what the assistant public defender who received the document did with it after this hearing. At the time of trial, the assistant public defender could not remember following up on the judge's instructions.
The first appearance judge, concerned that Mr. Rowell might be wrongfully charged, ordered that Mr. Rowell's case be placed on the docket for review on Tuesday, July 11, four days later. This hearing never occurred. According to the assistant public defenders involved in this case, they took no responsibility in keeping track of these types of hearings; instead, they traditionally relied exclusively upon the clerk of the court to properly document and schedule them. It appears that the clerk in this case mistakenly noted that the hearing would *477 be held on July 15, a Saturday on which no hearings were held. Although hearings presumably occurred before this judge with the participation of assistant public defenders on July 11, Mr. Rowell's case was not addressed. As a result, Mr. Rowell remained in jail past July 11 and July 15.
Meanwhile, through the natural process of opening files, Mr. Rowell's case was assigned to a third assistant public defender. This attorney first reviewed the file on July 12, 1995. The file did not contain the document indicating Mr. Rowell's civil rights had been restored or any notation that a hearing had been scheduled. The assistant public defender therefore gave the case no particular priority, but scheduled his first visit with Mr. Rowell at the jail on July 18, 1995. Once this assistant public defender met with Mr. Rowell on July 18, and Mr. Rowell provided the attorney with yet another copy of the document restoring Mr. Rowell's civil rights, the assistant public defender was able to obtain Mr. Rowell's release from jail within two days. The charges against Mr. Rowell were ultimately dismissed.
Mr. Rowell filed a legal malpractice action against the Office of the Public Defender. At trial, he contended that the assistant public defenders handling his case were negligent, because he presented them with a document that could have secured his immediate release, yet it took them over ten days to do so. As a result, he requested damages including his lost earning capacity and damages for his "loss of liberty," including the mental anguish, inconvenience, and embarrassment caused by his unnecessarily extended incarceration.
Throughout the trial, counsel for the Office of the Public Defender sought to limit Mr. Rowell's recovery to his economic damages because Mr. Rowell had not suffered any impact or physical injury as a result of his incarceration. The trial judge rejected this argument and held that the "impact rule" did not apply in this context....
The jury found that the assistant public defenders were negligent, and their negligence caused Mr. Rowell to suffer certain damages. They awarded Mr. Rowell $504 for his loss of earning capacity and $16,500 for his mental anguish, pain, and suffering. After the verdict, the Office of the Public Defender filed a motion for judgment notwithstanding the verdict, again challenging the award of noneconomic damages as a violation of the impact rule. The trial court denied this motion and entered a final judgment in favor of Mr. Rowell in accordance with the jury's verdict.
Rowell, 798 So.2d at 768-70.
Based on the facts presented, the district court following existing precedent, as required, held that existing Florida law pertaining to the impact rule precluded an award of damages for mental injury, and begrudgingly reversed that portion of the jury award. See id. at 770. The district court articulately expressed its misgivings and reservations with regard to applying the impact rule in the context of Rowell's action, but did so with the certification of a question to this Court to determine whether the rule should preclude recovery for emotional harm in the instant case. See id. at 770-72. This review followed.

ANALYSIS
We begin our analysis of the question presented with a brief review of the impact rule as it has been applied by the courts in this state. The rule requires that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress *478 suffered must flow from physical injuries sustained in an impact." R.J. v. Humana of Fla., Inc., 652 So.2d 360, 362 (Fla.1995) (quoting Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992)). The impact rule has been traditionally applied primarily as a limitation to assure a tangible validity of claims for emotional or psychological harm. See R.J., 652 So.2d at 363; Gonzalez v. Metro. Dade County Pub. Health Trust, 651 So.2d 673, 675 (Fla.1995); Kush v. Lloyd, 616 So.2d 415, 423 n. 5 (Fla.1992). Florida jurisprudence has generally reasoned that such assurance is necessary because, unlike physical injury, emotional harm may not readily align with traditional tort law damage principles. Our courts have explained that the existence of emotional harm is difficult to prove, resultant damages are not easily quantified, and the precise cause of such injury can be elusive. See R.J., 652 So.2d at 362. This Court has also theorized that without the impact rule, Florida courts may be inundated with litigation based solely on psychological injury. See Gonzalez, 651 So.2d at 675.
In recent years, this Court has had occasion to review the continued vitality of the impact rule, and has consistently reaffirmed that the rule serves as an important safeguard when applied under certain proper circumstances in our judicial system. See, e.g., R.J., 652 So.2d at 363; Gonzalez, 651 So.2d at 674-75. The impact rule is not, however, an inflexible, unyielding rule of law, so sacred that it must be blindly followed without regard to context. If we were to ascribe such weight to the doctrine, the impact rule itself would exceed the parameters of its underlying justifications. Exceptions to the rule have been narrowly created and defined in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale undergirding application of the impact rule. See Tanner v. Hartog, 696 So.2d 705, 708 (Fla. 1997); Kush, 616 So.2d at 422-23.[1]
In Kush, the parents of a child born with a genetic impairment initiated an action for wrongful birth against the hospital and physicians who had informed them prior to the mother's becoming pregnant that neither parent carried a genetic abnormality. See Kush, 616 So.2d at 417. The parents sought recovery for both the expenses incurred in caring for their child as well as damages for mental anguish. See id. This Court held the impact rule inapplicable to wrongful birth actions, and in so doing, expressed doubt that the impact rule was ever intended to embrace the tort of wrongful birth "where emotional damages are an additional `parasitic' consequence of conduct that itself is a *479 freestanding tort apart from any emotional injury." Id. at 422 (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 361-65 (5th ed.1984)). The Court further reasoned that to the extent the impact rule does not apply to recognized torts such as defamation and invasion of privacy, which result in predominantly emotional damages, it should not preclude recovery for the mental anguish flowing from a wrongful birth, where such harm is equally foreseeable and certainly more grievous. See id. at 422 (citing Miami Herald Publ'g, 66 So.2d at 681, and Cason, 20 So.2d at 243). In the words of the Kush Court:
There can be little doubt that emotional injury is more likely to occur when negligent medical advice leads parents to give birth to a severely impaired child than if someone wrongfully calls them liars, accuses them of unchastity, or subjects them to any other similar defamation. A defamation may have little effect, may not be believed, might be ignored, or could be reversed by trial publicity. But the fact of a child's serious congenital deformity may have a profound effect, cannot be ignored, and at least in this case is irreversible.
Id. at 422-23.
In Tanner, this Court again invoked the concept of foreseeability in holding that the impact rule should not preclude the parents of a child stillborn as a result of negligent medical care from recovering for the mental anguish sustained. See Tanner, 696 So.2d at 708. The Court correctly reasoned that the impact rule should not be applied to produce the "outright denial of a claim for the mental pain and anguish which is so likely to be experienced by parents as a result of the birth of a stillborn child caused by the negligence of another." Id. (emphasis added). The Tanner Court also carefully expressed its limited determination that the case constituted a "natural evolution of the common law," which was not intended to degrade the impact rule. Id.
Considering and applying the reasoning employed in Kush and Tanner, we determine that the impact rule should not preclude recovery of noneconomic damages in the instant case. In rendering this decision, we approve the reasoning of the district court below that the special professional duty created by the relationship between Rowell and his attorney, coupled with the clear foreseeability of emotional harm resulting from a protracted period of wrongful pretrial incarceration, render application of the impact rule unjust and without an underlying justification in the factual circumstances here. Moreover, we are persuaded by the petitioner's arguments that the facts presented in the instant action neither implicate nor call forth the legal and policy concerns that have been historically advanced as justification for the application of the impact rule.
There is no question that, as Rowell's attorney, the assistant public defender who participated in the preliminary presentation hearing had a special, professional, and independent duty to "exercise the degree of reasonable knowledge and skill which lawyers of ordinary ability and skill possess and exercise." Home Furniture Depot, Inc. v. Entevor AB, 753 So.2d 653, 655 (Fla. 4th DCA 2000). It is also uncontroverted that clearly Rowell had been wrongfully arrested and confined, andas proven by the videotape of the presentation hearingthat he provided his attorney with the document necessary to secure his immediate release from his pretrial incarceration. There is also no dispute that, once in the possession of Rowell's attorney, the document apparently vanished, and, in any case, was not produced to the presiding judge as the judge had *480 specifically instructed. Rowell, in effect, laid in his attorney's hands the very keys to the jailhouse door, which his attorney negligently failed to place in the lock. As a direct result of his attorney's negligence, Rowell was subjected to a protracted period of wrongful pretrial confinement, and concomitant loss of treasured liberty.
Given the facts of this case, Rowell's attorneywhose sole concern should have been to facilitate Rowell's immediate release from pretrial incarcerationcould doubtlessly foresee that his negligent failure to end his client's wrongful incarceration would result in significant emotional distress. Indeed, the citizens of a free society can conceive of no greater injury than the continued unjust deprivation of liberty. The special duty undertaken by Rowell's attorney, along with the foreseeability of the harm that would flow from his breach of that duty, lead us to conclude that the impact rule should have no application here to preclude Rowell's recovery of damages for psychological injury.
We are also persuaded that the facts of the instant case do not implicate the legal and policy concerns that are traditionally voiced as undergirding the impact rule. Unlike some actions involving emotional harm, the issue of causation presented here is straightforward and beyond reasoned dispute. A direct causal link can be clearly and rationally drawn in the instant case from the attorney's negligent failure to transmit the document showing the restoration of Rowell's civil rights to the extended period of continuing wrongful pretrial confinement and resultant emotional injury.
Moreover, the damages suffered in the instant case are reasonably capable of measurement. This is not a case in which Rowell simply experienced a few hours or one day of unjust pretrial imprisonment. Here, the hours became days and the days extended beyond a week as he was confined within the walls of a small cell deprived of one's most basic freedomsthe freedom of movement, the right to privacy, and the freedom to associate with persons of one's own choosing. For the emotional trauma flowing from this deprivation of liberty, and corresponding injury, albeit mental in nature, a jury of his peers deemed $16,500 to be proper compensation. While we are cognizant of precedent suggesting that the impact doctrine properly reflects the principle that "[t]here must be some level of harm which one should absorb without recompense as the price he pays for living in an organized society," Gonzalez, 651 So.2d at 675 (quoting Stewart v. Gilliam, 271 So.2d 466, 477 (Fla. 4th DCA 1972) (Reed, C.J., dissenting), quashed, 291 So.2d 593 (Fla.1974)), we believe that Rowell paid too high a price with his pretrial liberty to be forced to forego compensation based upon rigid application of a limiting doctrine, and that the jury award reasonably represented the damages logically flowing from his injury. No man or woman should be forced to be wrongfully incarcerated on a continuing extended basis in a pretrial detention posture while his or her attorney holds the key in hand to simply open the door to freedom. Under these circumstances, it is beyond reason to suggest that society or the law should insulate one causing such continuing confinement with application of harsh artificial doctrines of such extreme impact.
In rendering this decision, we reject the respondent's arguments that permitting the assessment of damages for psychological injury in the instant case will open a Pandora's Box to claims for emotional distress for "anyone who spent time in jail justifiably or not." Our holding today is limited to matters involving wrongful, not justifiable, extended pretrial confinement *481 where the incarcerated individual's attorney holds the key to freedom, but fails to deliver material to a judge as instructed, and either discards or misplaces the evidence. It is beyond dispute that Rowell was innocent of the crime charged, should not have been arrested, and was wrongfully confined on a continuing basis in pretrial detention. Moreover, as previously expressed, the period of wrongful confinement in this case was lengthy. One whose arrest and imprisonment is even arguably justifiable, whose unjustified incarceration is relatively brief, or whose legal representative does not have the clear and uncontroverted evidence in hand which facially eliminates the basis for the charges, will find no succor in this decision.
Furthermore, we deem untenable respondent's contention that our holding will implicate the entire spectrum of legal defense work, including claims of ineffective assistance of counsel, and we specifically state that such is not the field in which this decision flows. The instant case does not simply involve negligence arising from insufficient preparation, incomplete investigation, legal ineptitude, or any other subjective indicia of a lawyer's performance. To obtain his client's release, Rowell's attorney here needed only to deliver, transmit, or hand over to the judge the document which he had been provided and which he held in his hands. The attorney simply and completely failed to follow through or do anything, which resulted in Rowell's lengthy period of continuing pretrial confinement. In light of the unique facts of this case, we are satisfied that our holding here today will notas respondent claimssubject defense attorneys to incessant second-guessing and excessive litigation.
This determination should not, and we are confident will not, be interpreted to cast doubt on the continued viability of the impact rule, nor should this decision be extended any further than as narrowly tailored. We reaffirm the role the impact rule plays as a safeguard against unduly speculative claims. However, neither law nor policy compels or justifies application of the impact rule in the instant case. Cf. R.J., 652 So.2d at 363-64 (refusing to create an exception to the impact rule for emotional distress suffered from negligent medical testing and expressly stating that the creation of such an exception would have a "substantial impact" on the provision of medical care). Where an attorney bearing a special professional duty to protect the rights of his client is provided the means to unquestionably break down the walls of wrongful, unjust pretrial restraint, but negligently fails to do so by not even delivering the clear and uncontroverted evidence, the impact rule should not bar recovery for the emotional distress that would foreseeably result.

CONCLUSION
For the foregoing reasons, we quash that portion of the district court's decision that reversed the jury award for psychological damages, approve the remainder of the decision below, and remand for a reinstatement of the noneconomic damages awarded by the jury.
It is so ordered.
QUINCE, J., and SHAW, Senior Justice, concur.
WELLS, J., concurs with an opinion, in which ANSTEAD, C.J., concurs.
PARIENTE, J., concurs specially with an opinion.
WELLS, J., concurring.
I concur with the decision reached by the majority. However, I would answer the question as it was phrased by the *482 district court. I also reach this decision by different reasoning.
I note that in Schreiber v. Rowe, 814 So.2d 396, 399 (Fla.2002), this Court adopted a specific rule pertaining to legal malpractice claims against public defenders that a plaintiff "as part of the causation element of the cause of action, [is] to prove by the greater weight of the evidence that he was innocent of the crimes charged in the underlying criminal proceeding." Id. at 399 (quoting Rowe v. Schreiber, 725 So.2d 1245, 1251 (Fla. 4th DCA 1999)); see Johnson v. Gibson, 837 So.2d 481 (Fla. 5th DCA 2002), review dismissed, No. SC03-399, 845 So.2d 890 (Fla. Apr.24, 2003).
In view of this specific condition requiring a plaintiff to prove innocence in this cause of action, I believe that when a plaintiff can carry this burden of proof and also demonstrate that the legal malpractice caused a loss of liberty, the damages which should be available to be recovered by the plaintiff should logically be the same damages as are available to be recovered for the tort of false imprisonment. Certainly, I recognize that false imprisonment, unlike legal malpractice, is an intentional tort. But under our precedent, a claim for false imprisonment can be brought regardless of malice. Thus, I cannot see that the difference between intent and negligence in this instance should control the compensatory damages which can be recovered. An innocent person falsely imprisoned is equally damaged in respect to compensatory damages, regardless of whether the imprisonment flows from intentional conduct by a store owner or negligent conduct by a public defender.
In S.H. Kress & Co. v. Powell, 132 Fla. 471, 180 So. 757 (1938), this Court set out the available damages recoverable for false imprisonment:
In an action for false imprisonment, which may be brought regardless of whether there was, or was not, malice, the elements of recoverable compensatory damages may include bodily injuries or physical suffering, which are the proximate result of the unlawful imprisonment, or illness caused thereby; physical inconveniences and discomfort suffered by reason of the condition of the place of confinement; loss of time, and losses sustained in the business or employment of the plaintiff; expenses incurred as a result of the unlawful imprisonment; mental suffering endured because thereof, such as embarrassment, humiliation, deprivation of liberty, disgrace and injury to the feelings of the person unlawfully imprisoned, as well as injury to his reputation, resulting therefrom. 25 C.J. 556-560.
Id. at 763; see Normius v. Eckerd Corp., 813 So.2d 985, 987 (Fla. 2d DCA 2002).
On the basis of this reasoning, I would answer the question certified by the district court in the negative.
ANSTEAD, C.J., concurs.
PARIENTE, J., specially concurring.
I write separately to indicate my agreement with the approach set forth in Justice Wells' separate concurrence. Further, although I agree with the majority that the impact rule should not bar the petitioner's recovery of damages in this case, I write to once again express my view that the Court should abolish the impact rule. See Gracey v. Eaker, 837 So.2d 348, 358 (Fla.2002) (Pariente, J., concurring).
The issue in this case is whether the impact rule should prohibit Rowell from recovering emotional damages sustained during his incarceration for a period extending nearly two weeksa loss of liberty which directly resulted from the uncontroverted negligence of his attorney. I fully concur with the majority that none of the *483 policy reasons underlying the impact rule would be served by denying Mr. Rowell his right to recover the damages awarded by the jury. I further agree with Justice Wells that this legal malpractice action should be conceptually analyzed as a claim of false imprisonment. As the Second District in this case pointed out, the damages awarded by the jury to Mr. Rowell are no different than those to which he would have been entitled if the underlying cause of action had been for malicious prosecution or false imprisonment rather than for wrongful incarceration directly resulting from his attorney's negligence. See Holt v. Rowell, 798 So.2d 767, 772 n. 3 (Fla. 2d DCA 2001) ("The existence of a freestanding tort explains the trial judge's inclination to treat the recoverable damages as similar to those in the torts of malicious prosecution or false imprisonment.").
This case is one more example of why "Florida should join the growing number of states that have abolished the arbitrary restriction on tort claims imposed by the judicially created impact rule." Gracey, 837 So.2d at 358 (Pariente, J., concurring). In my view, the recovery of damages for mental anguish should not depend on whether Mr. Rowell suffered an actual injury while he was incarcerated or alternatively became physically ill because of his incarceration.[2] As I stated in my recent concurrence in Gracey:
The impact rule, as applied in Florida, holds that, in the absence of a discernible physical injury or illness flowing from emotional distress or an actual impact, a person cannot recover compensatory damages for mental distress or psychiatric injury. See generally Hagan v. Coca-Cola Bottling Co., 804 So.2d 1234, 1236-38 (Fla.2001). The rationale for the impact rule as a limitation on certain claims is that it serves as a means of "assuring the validity of claims for emotional or psychic damages." R.J. v. Humana of Florida, Inc., 652 So.2d 360, 363 (Fla.1995). However, this Court's wariness of psychic damages has not prevented it from carving out exceptions to the impact rule in a variety of circumstancesas the present case demonstrates. See, e.g., Kush v. Lloyd, 616 So.2d 415, 422-23 (Fla.1992); Champion v. Gray, 478 So.2d 17, 19-20 (Fla.1985), receded from on other grounds in Zell v. Meek, 665 So.2d 1048, 1053 (Fla.1995).
In my view, the impact rule reflects an outmoded skepticism for damages resulting from mental injuries. As best summarized by the Illinois Supreme Court:
The requirement [of physical manifestation of emotional distress] is overinclusive because it permits recovery for *484 mental anguish when the suffering accompanies or results in any physical impairment, regardless of how trivial the injury. More importantly, the requirement is underinclusive because it arbitrarily denies court access to persons with valid claims they could prove if permitted to do so.
Additionally, the requirement is defective because it "encourages extravagant pleading and distorted testimony." To continue requiring proof of physical injury when mental suffering may be equally recognizable standing alone would force "victim[s] to exaggerate symptoms of sick headaches, nausea, insomnia, etc., to make out a technical basis of bodily injury upon which to predicate a parasitic recovery for the more grievous disturbance, the mental and emotional distress she endured."

Corgan v. Muehling, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602, 608 (1991) (quoting St. Elizabeth Hosp. v. Garrard, 730 S.W.2d 649, 652 (Tex.1987)) (citations omitted).
I believe that the traditional foreseeability analysis applicable to negligence claims is the more appropriate framework for a limitation on tort recovery in this State. See McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla.1992) ("The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader `zone of risk' that poses a general threat of harm to others.").
837 So.2d at 358-59 (Pariente, J., concurring). As the Second District in this case explained, the foreseeability analysis fits logically into the factual framework presented here.
In reviewing the policy reasons behind the impact rule, we tend to agree [with Rowell that the impact rule should not bar his claim]. There is no question that the Office of the Public Defender established an attorney-client relationship with Mr. Rowell, and thus owed to Mr. Rowell a duty to exercise the degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise. See Home Furniture Depot, Inc. v. Entevor AB, 753 So.2d 653 (Fla. 4th DCA 2000). Because this was a criminal matter subjecting Mr. Rowell to confinement, it was foreseeable that the neglect of such a duty could cause a loss of liberty and attendant emotional and psychological harm. In our estimation, this case is similar to Tanner, 696 So.2d 705, and Kush, 616 So.2d 415, in that the emotional damages are a "parasitic" consequence of conduct that itself is a freestanding tort. In other words, there is a clearly defined duty due to the direct relationship between the attorney and client that, if breached, presents a substantial risk of emotional or psychological harm. Under these circumstances, the application of the impact rule deprives Mr. Rowell of any real remedy for the malpractice of his attorney, despite the duty owed and breached and the foreseeability of the damages caused. See, e.g., Tanner, 696 So.2d at 708 ("It is difficult to justify the outright denial of a claim for the mental pain and anguish which is so likely to be experienced."). As a practical matter, this result also insulates criminal defense attorneys from all but nominal damage awards when their negligence results in the extended incarceration of their client, absent proof that their dereliction was willful, wanton, or malicious.
Holt, 798 So.2d at 772 (emphasis supplied) (footnotes omitted).
Simply stated, since none of the policy reasons for the impact rule exist in this *485 case, I agree with the majority that damages were properly recoverable. Moreover, as the well-reasoned opinion of the Second District in this case demonstrates, I believe the traditional foreseeability analysis is a more logical approach in these cases. Thus, I would eliminate the arbitrary requirement of the impact rule.
NOTES
[1] The impact rule does not apply to recognized intentional torts that result in predominantly emotional damages, including the intentional infliction of emotional distress, see Eastern Airlines, Inc. v. King, 557 So.2d 574, 576-77 (Fla.1990), defamation, see Miami Herald Publishing Co. v. Brown, 66 So.2d 679, 681 (Fla.1953), and invasion of privacy, see Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 251 (1944). While classification has not been consistent throughout our jurisprudence, intentional torts have been deemed exclusions from, as opposed to exceptions to, the impact rule. See Eastern, 557 So.2d at 579 (Ehrlich, C.J., specially concurring) (reiterating that a physical manifestation of psychological trauma is not required in connection with intentional infliction of emotional distress). But see R.J., 652 So.2d at 363 (discussing Eastern in the context of exceptions to the impact rule). There is, however, no cognizable action for simple negligence resulting in psychological trauma, alone, unless the case fits within one of the narrow exceptions to the impact rule. See R.J., 652 So.2d at 363; Brown v. Cadillac Motor Car Div., 468 So.2d 903, 904 (Fla.1985).
[2] As the Second District in this case observed regarding confusion as to whether the impact rule describes the need for a primary impact or for physical injury from psychological trauma:

In Florida, the combination of these two principles has been called the "impact rule" or "impact doctrine." This results in some confusion as to whether "impact" refers to a physical impact upon the plaintiff at the time of the accident, or the physical injury a plaintiff may suffer after psychological trauma. See, e.g., Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992) (describing the impact rule as "preclud[ing] the recovery of damages for negligent infliction of emotional distress unless the emotional distress arises directly from the physical injuries sustained by the plaintiff in the impact"). In fact, the latter analysis that requires the plaintiff manifest some physical injury as a result of the emotional trauma is commonly known as the "zone of danger" rule, as it requires the plaintiff to be within the "zone of danger" created by the defendant's negligence. See Davies, Direct Actions for Emotional Harm: Is Compromise Possible?, 67 Wash. L.Rev. 1, 8 (Jan.1992).
Holt, 798 So.2d at 770 n. 1.