913 So.2d 1188 (2005)
Jeffrey WOODARD and Carol Gload, Appellants,
v.
JUPITER CHRISTIAN SCHOOL, INC., and Todd Bellhorn, Appellees.
No. 4D04-3531.
District Court of Appeal of Florida, Fourth District.
October 12, 2005.
*1189 Michelle Hankey and William Booth of Legal Aid Society, West Palm Beach, for appellants.
John L. Bryan, Jr., and S. Brian Bull of Scott, Harris, Bryan, Barra & Jorgensen, P.A., Palm Beach Gardens, for appellees.
MAY, J.
The application of the impact rule to a claim for negligent infliction of emotional distress is the focus of this appeal. The plaintiffs argue their claim is consistent with the Florida Supreme Court's recognized exception to the impact rule and the trial court erred in dismissing count three.[1] We disagree and affirm.
The minor plaintiff was a student at the Jupiter Christian School (JCS), a private Bible-centered school, unconnected with any established church. However, the school has a chapel and students are required to attend weekly chapel services. JCS employed Todd Bellhorn as a "Secondary Teacher-HS/Chaplain." The complaint alleged the chaplain's stated objective was to "minister to high school teenagers" and "to not only be a teacher to them, but also one whom they can trust and approach without fear or intimidation."
The student had attended JCS since the ninth grade. In his senior year, JCS administrators directed Bellhorn to meet with him to question and counsel him about his sexual orientation. Bellhorn *1190 asked the student to leave his class, and took him to a private area of the campus.
According to the allegations, Bellhorn assured the student their conversation was confidential. Only after receiving this assurance, did the student disclose he was homosexual. The complaint alleged the student made this disclosure to seek spiritual counsel from Bellhorn as chaplain to receive salvation. Bellhorn then counseled the student about Biblical views of homosexuality.
Bellhorn relayed the information to the school's administrators, who then disclosed the information to others. The administrators expelled the student from JCS. The complaint alleged the student was berated by the press and the president of JCS, and shunned by his schoolmates as a result of the disclosure.
The student and his mother filed suit against JCS and Bellhorn. Count three of a six-count amended complaint alleged a claim for negligent infliction of emotional distress related to Bellhorn's and JCS's breach of the fiduciary duty of confidentiality. JCS and Bellhorn moved to dismiss count three and argued the claim was barred by the impact rule. The trial court granted the motion and dismissed count three with prejudice.
We review the order dismissing count three de novo because it concerns a question of law regarding the application of the impact rule. Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732 (Fla.2002).
The plaintiffs suggest the impact rule does not apply to the wrongful disclosure of confidential information such as that alleged in this case. They claim the alleged breach of the confidential relationship between a member of the clergy and an individual is the same as that excepted from the impact rule by our supreme court in Gracey v. Eaker, 837 So.2d 348 (Fla.2002) (a claim for negligent infliction of emotional distress for a psychotherapist's disclosure of confidential information is not barred by the impact rule). The defendants counter that our supreme court has not yet created an exception for a disclosure made by a member of the clergy. They also argue that Bellhorn's status as "chaplain" does not fall within the clergyman privilege provided by section 90.505, Florida Statutes (2003) because the school is not connected with any established church.
We begin our analysis with the genesis of Florida's impact rulea judicially-created rule designed to assure the validity of claims for emotional distress. See Int'l Ocean Tel. Co. v. Saunders, 32 Fla. 434, 14 So. 148 (1893). "The impact rule . . . requires that `before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'" See Southern Baptist Hosp. of Fla. v. Welker, 908 So.2d 317 (Fla.2005) (quoting R.J. v. Humana of Florida, Inc., 652 So.2d 360 (Fla.1995)). "[T]he underlying basis for the rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims." Id. at 362.
Since its creation, the Florida Supreme Court has adhered to the impact rule, carving out limited exceptions in extraordinary circumstances. See, e.g., Eastern Airlines, Inc. v. King, 557 So.2d 574 (Fla.1990) (recognizing the tort of intentional infliction of emotional distress absent impact); Champion v. Gray, 478 So.2d 17 (Fla.1985) (allowing recovery where plaintiff is in the "sensory perception" of physical injuries sustained by a close family member); Kush v. Lloyd, 616 So.2d 415 (Fla.1992) (finding rule inapplicable to actions *1191 for wrongful birth); Tanner v. Hartog, 696 So.2d 705 (Fla.1997) (impact rule does not preclude recovery of non-economic damages for parents of stillborn child); Gracey v. Eaker (impact rule inapplicable for breach of statutory duty of confidentiality to patient); Rowell v. Holt, 850 So.2d 474 (Fla.2003) (impact rule does not preclude recovery for psychological injury due to attorney's negligence). In short, "[e]xceptions to the rule have been narrowly created and defined in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale undergirding application of the impact rule." Id. at 478.
Here, the plaintiffs allege breach of a fiduciary duty arising from the relationship between the student and the chaplain. While similar in nature to the claim in Gracey, it is yet another set of circumstances asking to be excepted from the reach of the impact rule. This is a task best suited for our supreme court especially in light of the statutory scheme under which the plaintiff seeks recovery.
Section 90.505(1)(a), Florida Statutes (2004) defines a "member of the clergy" as "a priest, rabbi, practitioner of Christian Science, or minister of any religious organization or denomination usually referred to as a church, or an individual reasonably believed so to be by the person consulting him or her." The statute then provides that a "communication between a member of the clergy and a person is `confidential' if made privately for the purpose of seeking spiritual counsel and advice from the member of the clergy in the usual course of his or her practice or discipline and not intended for further disclosure except to other persons present in furtherance of the communication." See § 90.505(1)(b), Fla. Stat. (2003).
This statute creates a four-part test to establish the existence of a privilege. First, the communication must be made to a "member of the clergy." Second, the statement must be made for the purpose of seeking spiritual counseling or advice. Third, the information must be received in the usual course of the clergyman's practice or discipline. And fourth, the communication must be made privately and not intended for further disclosure. Nussbaumer v. State, 882 So.2d 1067 (Fla. 2d DCA 2004).
While the facts may ultimately disprove the allegations, Bellhorn is alleged to be an individual the student "reasonably believed" to be a member of the clergy. Bellhorn approached the student, took him to a private location, and questioned him concerning his sexual orientation. He did that in his capacity as school chaplain. The student alleged he did not intend his discussion with Bellhorn to be shared with others and specifically asked Bellhorn about the confidential nature of the conversation before answering any questions. Taking these well-pled allegations as true for the purposes of the motion to dismiss, the plaintiff has alleged the disclosure of confidential information arising from a special relationship between the student and a member of the clergy.
However, the Supreme Court of Florida has not yet recognized an exception to the impact rule for disclosure of information by a member of the clergy. And, because of the far-reaching consequences that will result if such an exception is created, we decline to ignore the impact rule to which our Supreme Court rightfully continues to adhere. We certify the following question to the Florida Supreme Court:
Does the impact rule preclude a claim for negligent infliction of emotional distress arising out of the breach of confidential *1192 information provided to a clergyman?
Affirmed.
STONE, J., concurs specially with opinion.
FARMER, J., dissents with opinion.
STONE, J., concurring specially.
I concur in the opinion except that I would also hold that a teacher designated as a "chaplain" by a school, even a Christian school, is not a member of the "clergy" for the purpose of applying section 90.505(1)(a). In my judgment, the benefit of the statute applies to confidential disclosures to priests, rabbis, ministers, and persons in equivalent positions, or those reasonably thought to be such, and does not extend to communications with a lay individual who is simply designated by an organization, even a religious school, as a "chaplain" or an equivalent counselor.
FARMER, J., dissenting.
A teen-aged student sought spiritual advice and counseling under a promise of confidentiality from his religious school's chaplain.[2] The student alleges that the chaplain breached his commitment to keep the discussion private, and disclosed its substance to the school's leaders, who proceeded to throw the student out of the school. The student sued for damages from humiliation and distress arising from the betrayal of what were obviously his very private conflicts. Defendants, in turn, prayed that the trial judge throw him out of court as well, citing the impact rule. He challenges that dismissal.
Essentially defendants contend that "for every tort there is the impact rule." They are mistaken. The rule of recognition for the impact rule in Florida is to the contrary. Anyway this is not an impact rule case.
The supreme court has made clear in a significant and now extended line of decisions under our common law that the impact rule does not apply to tort claims in which the injury is predominantly emotional. This cause of action for infliction of emotional distress does not involve merely an incidental emotional damage.
In Kush v. Lloyd, 616 So.2d 415, 422 (Fla.1992), the court first announced a categorical holding that the impact rule is "inapplicable to recognized torts in which damages often are predominately emotional, such as ... invasion of privacy." Kush relied on that apotheosis of the common law, the Restatement of Torts. See RESTATEMENT (SECOND) OF TORTS §§ 569, 570, 652H cmt. b (1977). Kush expressly stated that the inapplicability of the impact rule in such tort cases is entirely consistent with established Florida law:
"For example, it is well settled that mental suffering constitutes recoverable damages in cases of negligent defamation, e.g., Miami Herald Publishing Co. v. Brown, 66 So.2d 679, 681 (Fla.1953), or invasion of privacy. See Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 (1944)."
616 So.2d at 422. Kush was followed by Tanner v. Hartog, 696 So.2d 705 (Fla.1997), where the court held the impact rule inapplicable to a parents' claim for negligent stillbirth.
The principal injury for which invasion of privacy actions seek redress is the humiliation and embarrassment suffered by the victim. A breach of confidentiality is an invasion of privacy. In this case, plaintiff *1193 called his tort claim an infliction of emotional distress because that is what results when one's innermost personal thoughtsthe very feelings about which one would be most humiliated by publicationare unauthorizedly revealed. An invasion of privacy inflicts emotional distress.
The court has since reaffirmed and extended the holding begun in Kush. In Gracey v. Eaker, 837 So.2d 348 (Fla.2002), a psychotherapist was sued for unauthorizedly disclosing confidential information, a quintessential invasion of privacy claim. In that case the disclosure of this private, privileged information by a treating therapist was pleaded as a breach of fiduciary relationship. Gracey explained:
"In Kush v. Lloyd, we noted that the impact rule generally `is inapplicable to recognized torts in which damages often are predominately emotional.' ... We recognized that if the impact rule was inapplicable to emotional distress damages for torts such as defamation or invasion of privacy, in which the emotional distress of the victim was likely less severe, it should also be inapplicable to the more severe emotional distress of parents who had been assured that they were not at risk of bringing a deformed child into the world." [e.s., c.o.]
837 So.2d at 356. Here again the court has framed its holding so that the impact rule is inapplicable, not that invasion of privacy is an exception to the impact rule.
Gracey was succeeded by Rowell v. Holt, 850 So.2d 474 (Fla.2003), a case involving a legal malpractice claim by an accused defendant against his criminal defense attorney. He claimed that the negligence of the attorney resulted in an unwarranted extension of his pretrial confinement by a handful of days, from which he suffered emotional distress. In addressing the defense contention that the impact rule barred the claim, the court elaborated on why the impact rule does not apply to all tort claims:
"The impact rule is not ... an inflexible, unyielding rule of law, so sacred that it must be blindly followed without regard to context. If we were to ascribe such weight to the doctrine, the impact rule itself would exceed the parameters of its underlying justifications." [e.s.]
850 So.2d at 478. The court further explained:
"Considering and applying the reasoning employed in Kush and Tanner, we determine that the impact rule should not preclude recovery of noneconomic damages in the instant case. In rendering this decision, we approve the reasoning of the district court below that the special professional duty created by the relationship between Rowell and his attorney, coupled with the clear foreseeability of emotional harm resulting from a protracted period of wrongful pretrial incarceration, render application of the impact rule unjust and without an underlying justification in the factual circumstances here. Moreover, we are persuaded by the petitioner's arguments that the facts presented in the instant action neither implicate nor call forth the legal and policy concerns that have been historically advanced as justification for the application of the impact rule." [e.s.]
850 So.2d at 479.[3] The court held:
"The special duty undertaken by Rowell's attorney, along with the foreseeability *1194 of the harm that would flow from his breach of that duty, lead us to conclude that the impact rule should have no application here to preclude Rowell's recovery of damages for psychological injury."
850 So.2d at 480. The essential teaching of Rowell is that the impact rule is applicable only when the facts presented in the action implicate or call forth the legal and policy concerns that have been historically advanced as justification for its application. 850 So.2d at 479. The impact rule will not be applied when the application would exceed the "parameters of its underlying justifications." 850 So.2d at 478.
More recently in Southern Baptist Hospital of Florida Inc. v. Welker, 908 So.2d 317 (Fla.2005), the court once again stated that the impact rule has limited application:
"the impact rule does not apply to all recognized causes of action. Specifically, the impact rule is inapplicable to recognized intentional torts that result in predominantly emotional damages such as intentional infliction of emotional distress, defamation, or invasion of privacy claims. Thus, the issue of whether the impact rule applies is inextricably intertwined with the type of cause of action that is asserted." [e.s., c.o.]
908 So.2d at 320. This is a reiteration of Kush and Rowell.
Summing up these holdings, the impact rule is not presumptively applicable to all tort claims. Whether it applies to a particular claim is unavoidably connected with the nature of the cause of action being asserted. It does not apply when to do so "would exceed the parameters of its underlying justifications." The impact rule does not apply to actions in which emotional injury dominates over economic or other injuries. It does not apply to invasion of privacy claims. It does not apply to breach of confidentiality claims.
We also know that it does not apply when the emotional distress caused by a particular breach is greater than the kind of emotional distress caused in one of the specific instances in which the court has found it inapplicable. For example, it did not apply in Kush when the emotional distress caused by the negligent doctor was greater than the emotional distress caused by the invasion of privacy in Cason.
From these holdings, I have absolutely no doubts in concluding that:
1. If the impact rule is not applicable against a patient's claim for a psychologist's breach of confidentiality, it is not even arguably applicable to a clergyman's breach.[4] Psychotherapists may have displaced the clergy as the primary source of "spiritual" counseling, but as a profession they are immediate descendants of the clergy by a process of cultural selection. So close is the function of psychotherapists and clergy, so indistinguishable is the relationship between them and their patients and penitents, that if psychotherapists can *1195 be sued for breach of confidentiality by their patients without implicating the impact rule, thenby an even more formidable logicclergy members may equally be sued.
2. The emotional distress caused by the chaplain's breach of his promise of confidentiality and the resulting invasion of the student's privacy would very likely be significantly greater than the distress suffered by the accused in Rowell. Rowell was merely held in pretrial confinement a few days longer than he otherwise would have been held. In contrast the humiliation and distress of this young man could imprison him for a lifetime.
I do not agree that we must affirm simply because the supreme court has not yet passed on a claim that the clergy may be sued for breaching confidentiality without the application of the impact rule. Such a holding might be necessary if the court had indicated that the impact rule is presumptively applicable to all torts, but the court has not done that. The court has made clear in several cases that this rule is applicable only when the reasons for it are present. It has specified categories of cases to which it applies and those to which it does not apply.
An essential aspect of common law judging is to recognize the essential reasons for a rule and apply the rule only when those reasonsor functionally equivalent onesare present. The claim of this plaintiff fits so clearly within the category of cases to which the court has expressly found it inapplicable that I see no reason to doubt our authority to reject the defense here. It is not necessary to send to know for whom the bell tolls. It is not necessary to certify this issue.
I would reverse.
NOTES
[1] Because the dismissal of count three completely disposes of the claim against Bellhorn, it is a final appealable order. See Fla. R.App. P. 9.110(k). Other counts remain pending against Jupiter Christian School.
[2] Plaintiff's tort claim was dismissed on motion to dismiss. At this stage we are required to assume the truth of his allegations.
[3] If foreseeability is the touchstone of torts involving a breach of confidentiality, there can be no doubt that this chaplain could reasonably have foreseen his student's emotional distress. The student had insisted on the confidentiality as a prerequisite to his consultation with the chaplain.
[4] Compare § 90.503(2) ("A patient has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications or records made for the purpose of diagnosis or treatment of the patient's mental or emotional condition ... between the patient and the psychotherapist ....") with § 90.505(2), Fla. Stat. (2005) ("A person has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication by the person to a member of the clergy in his or her capacity as spiritual adviser."). A standard dictionary defines chaplain as "[a] member of the clergy [e.s.] attached to a chapel." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 321 (3d ed.) There is no accepted legal rationale for supposing that the chaplain of a religious school does not qualify as clergy.