THOMAS, J.
Appellant seeks reversal of a jury verdict arising out of a complaint filed by his siblings, Appellees, for negligent handling of a corpse, negligent infliction of emotional distress, and diminution of property value. The claims are based on Appellant’s dismembering of their mother’s corpse, burning it in a barrel, and scattering the remains on the family’s farm without disclosing the location of the remains. The jury found for the siblings on all claims, resulting in a total judgment award of $1.1 million dollars. We reverse the trial court’s order denying Appellant’s motion for directed verdict on the claim for negligent infliction of emotional distress, because Appellees failed to establish a physical impact or sufficient physical injuries resulting from Appellant’s actions. Appel-lees also failed to prove that they were involved in the events causing negligent injury, as they were not present when Appellant dismembered, cremated, and scattered his mother’s remains. We affirm the verdict for the diminution of property value and for negligent handling of a corpse.

Facts

Appellant and his mother, Martha Elliott, resided together on the family’s farm. Martha was a real estate agent and worked out of an office with Sharon Elliott, Appellee Douglas Elliott’s wife. When Martha did not show up for work on November 7, 2007, Sharon notified family members of her absence, who went to check on her. Appellant told them she left with an unknown man and would be back in a few days. Sharon determined the information was extraordinary, and she notified law enforcement and her husband Douglas, who was working 60 miles away and immediately left to assist in the search.
A search party converged on the farm, including cadaver canines, helicopters, and a dive team to search the nearby Suwan-nee River. Douglas and other family members testified they led law enforcement officers around the farm and pointed out locations where Martha’s body could have been hidden. Douglas was asked to use his personal tractor to dismantle a mulch pile covering a piece of bloody plastic. The family was included in daily updates and conferences held by the Suwan-nee County Sheriff. When Appellant drew a map for law enforcement revealing the location of Martha’s remains, Douglas interpreted the map and led officers to the field where Martha’s remains were eventually found.
Appellee Mary Ann Hooper lives in Melbourne, Florida, and could not travel to Suwannee County until November 9, 2007. She assisted in the search, but had to leave before Martha’s body was found. Douglas called her while she was driving back to Melbourne and told her the remains had been found.
Medical testimony revealed Mary Ann suffered from stress, insomnia, anxiety, di *880 arrhea, loss of appetite, and hair loss following her mother’s death. One physician diagnosed Mary Ann with situational anxiety depression and noted she had a history of depression, anxiety, and chronic pain.
Douglas testified he had a “real, real hollow feeling” knowing Martha had not been buried according to her wishes and that it was a horrendous situation trying to keep the family together after Martha’s death, mainly because of the continuing legal proceedings. He began having headaches and developed diabetes and sleep apnea after the incident. No medical testimony was introduced describing his physical injuries.
During the trial and at the close of Appellees’ case, Appellant moved for a directed verdict. Appellant argued that Ap-pellees’ failed to identify a physical impact sufficient to prove negligent infliction of emotional distress. The trial court denied Appellant’s motion, finding enough evidence was presented for the jury to determine whether Appellees suffered a physical impact. The jury granted relief on all claims, and awarded Appellees $400,000 due to Appellant’s negligent handling of a corpse, $600,000 for negligent infliction of emotional distress, and $100,000 for diminution of property value. Appellant moved for a judgment notwithstanding the verdict, which was denied. Appellant moved for a new trial after the judgment was entered, which was also denied.
Appellant raises four issues on appeal, arguing: (1) the trial court abused its discretion by admitting in this civil proceeding photographic and testimonial evidence from the criminal investigation; (2) a directed verdict should have been granted concerning Appellees’ claim for negligent infliction of emotional distress because Ap-pellees failed to establish the necessary elements of that tort; (3) Appellant was entitled to summary judgment on the diminution of property claim; and (4) the trial court abused its discretion by refusing to continue this civil proceeding until Appellant’s criminal appeal has been concluded.
We affirm issues 1, 3 and 4 without comment. As to issue 2, we agree that Appellees failed to establish the necessary elements of a claim for negligent infliction of emotional distress.

Analysis: The Impact Rule and Its Application Here

The standard of review on appeal of a trial court’s order denying a directed verdict is de novo; thus we determine as a matter of law whether the trial court erred by allowing the claim for negligent infliction of emotional distress to be considered by the jury. Meruelo v. Mark Andrew of Palm Beaches, Ltd., 12 So.3d 247, 250 (Fla. 4th DCA 2009) (“A trial court should grant a motion for directed verdict when the evidence, viewed in the light most favorable to the non-moving party, shows that a jury could not reasonably differ about the existence of a material fact and the movant is entitled to judgment as a matter of law.”). Applying this standard, we hold that Appellees’ physical manifestations do not satisfy the supreme court’s stringent requirements for demonstrable physical injury or illness, where there is no physical impact flowing from the wrongdoer’s conduct.
Generally, in order to recover damages for emotional distress caused by the negligence of another in Florida, the plaintiff must show that the emotional distress flows from physical injuries sustained in an impact. See Fla. Dep't of Corr. v. Abril, 969 So.2d 201, 206 (Fla.2007) (quoting R.J. v. Humana of Fla., Inc., 652 So.2d 360, 362 (Fla.1995)). The reasoning behind the impact rule has generally been that emotional harm may be difficult to prove, damages are not easily defined, and the cause *881 of such an injury can be elusive. See Rowell v. Holt, 850 So.2d 474, 478 (Fla.2003). “‘[T]he underlying basis for the [impact] rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims.’” Gracey v. Eaker, 837 So.2d 348, 355 (Fla.2002) (alteration in original) (quoting R.J., 652 So.2d at 362). Thus, the impact rule has been applied as a limitation to assure the validity of claims for emotional and psychological -harm. Rowell, 850 So.2d at 478.
But the impact rule is not an inflexible command, and does yield to narrow exceptions “in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale un-dergirding application of the impact rule.” Id. Thus, as in Gracey and Holt, for example, where parallel policy considerations expressed in statutory protections outweighed the rationale of the impact rule’s requirements, the supreme court stated the rule will yield to exceptions and liability can be established without a physical impact.
In a seminal 1985 case involving the supreme court’s treatment of the rule, the court concluded that “the price of death or significant discernible physical injury, when caused by psychological trauma resulting from negligent injury imposed upon a close family member within the sensory perception of the physical injured person, is too great a harm to require direct physical contact before a cause of action exists.” Champion v. Gray, 478 So.2d 17, 18-19 (Fla.1985) (emphasis added). The court has emphasized that the physical impairment must accompany or occur within a short time after the emotional distress, but it receded from the requirement that the plaintiff contemporaneously witness the injury to another person in Zell v. Meek, 665 So.2d 1048, 1053-54 (Fla.1995). After receding from the time requirement, the Zell court reaffirmed the elements for negligent infliction of emotional distress:
(1) the plaintiff must suffer a physical injury; (2) the plaintiffs physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have close personal relationship to the directly injured person.
Id. at 1054 (emphasis added).
Put another way, the impact rule in Florida has evolved into a dichotomy: If the plaintiff suffers an impact, he or she is permitted recovery for the emotional distress flowing from the incident in which the impact occurred; if the plaintiff has not suffered an impact, the mental distress must be manifested by a discernable physical injury, the plaintiff must have been involved in the incident which involved a closely-related person, and the plaintiff must suffer the physical injury within a short time after the incident. See Willis v. Gami Golden Glades, LLC, 967 So.2d 846, 850 (Fla.2007) (quoting Zell, 665 So.2d at 1050 n. 1). Appellees proceeded below under the latter theory.
Beginning in Brown v. Cadillac Motor Car Division, 468 So.2d 903, 904 (Fla.1985), which was issued the same day as Champion, the Florida Supreme Court held that “such psychological trauma must cause a demonstrable physical injury such as death, paralysis, muscular impairment, or similar objectively discernible physical impairment.” The clearest example of psychological trauma resulting in physical injury occurred in Champion where the plaintiffs wife “was so overcome with shock and grief that she collapsed and died on the spot” upon arriving at the scene of *882 her daughter’s death. 478 So.2d at 18. In Zell, the court approved the reversal of a summary judgment entered against a plaintiff who developed insomnia, depression, short-term memory loss, extreme fear of loud noises, a blockage in her esophagus, and fibromyalgia after witnessing her father being killed in an apartment bombing. 665 So.2d at 1049-50. Medical testimony in Zell linked the plaintiffs medical conditions to emotional distress. Id. at 1050.
In LeGrande v. Emmanuel, 889 So.2d 991, 995 (Fla. 3d DCA 2004), the Third District concluded that exacerbation of pre-existing diabetes and memory loss was “wholly insufficient” to succeed in a negligent infliction of emotional distress action. In Langbehn v. Public Health Trust of Miami-Dade County, 661 F.Supp.2d 1326, 1332-41 (S.D.Fla.2009), the federal court concluded that stomach pain, nausea, exacerbation of preexisting multiple sclerosis, nightmares, severe depression, and post-traumatic stress disorder “though somewhat thin, would be sufficient to satisfy the impact rule at this stage of the litigation.” But the court’s analysis was dicta, and we decline to follow the court’s description of these symptoms as adequate to satisfy the impact rule under Florida law. See, e.g., Gonzalez-Jimenez de Ruiz v. U.S., 231 F.Supp.2d 1187, 1201-02 (M.D.Fla.2002) (concluding that aggravation of pre-exist-ing conditions, such as diabetes and asthma, is insufficient to satisfy impact rule), aff'd, 378 F.3d 1229, 1231 (11th Cir.2004).
Here, the ailments complained of are headaches, diabetes, sleep apnea, stress, insomnia, anxiety, loss of appetite, hair loss, and bowel trouble, which are not the sort of the discernable physical injuries discussed in Champion and Zell. In addition, medical testimony discussing Mary Ann’s injuries was equivocal, and no evidence was introduced linking Douglas’s ailments to Appellant’s acts. Cf. Zell, 665 So.2d at 1050 (noting plaintiff introduced medical testimony linking medical conditions to emotional distress), with Champion, 478 So.2d at 20 (holding plaintiff established entitlement to relief without addressing whether plaintiffs death was medically attributable to emotional shock).
We also conclude that Appellees failed to satisfy the third element of negligent infliction of emotional distress because Ap-pellees were not involved in the dismemberment of their mother’s corpse. See Zell, 665 So.2d at 1054. Neither Douglas nor Mary Ann was present when Appellant dismembered, cremated and scattered Martha’s remains. Douglas testified he was on the road the day Martha went missing and did not arrive at the farm until that afternoon; Mary Ann did not arrive until two days later. None of the cases discussing negligent infliction of emotional distress contemplates such a large temporal gap between the incident and the plaintiffs arrival at the scene. See Champion, 478 So.2d at 18 (plaintiff “came immediately to the accident scene”); Zell, 665 So.2d at 1049 (plaintiff directly involved in explosion that killed her father).
We likewise reject Appellees’ argument that the temporal gap was irrelevant because the negligent accident in this case not only included the dismemberment and cremation of them mother, but also included Appellant’s willful omission in failing to disclose the location of Martha’s remains during the entirety of the search. Although timing of the accident and perception are only two factors to be considered in a negligent infliction of emotional distress claim, it is important here because allowing recovery could create an extension of the law, which we are not empowered to do, absent more definitive direction from the supreme court. See Gonzalez v. *883 Metro. Dade County Pub. Health Trust, 651 So.2d 673, 675-76 (Fla.1995) (declining to adopt section 868 of the Restatement (Second) of Torts, which would remove the physical impact requirement and eliminate the physical injury currently required under Florida law for claims arising from negligent mishandling of corpse).
While we do not dimmish Appellees’ anguish and suffering in this distressing case, we hold that under controlling authority, we are not at liberty to affirm the judgment finding for Appellees on negligent infliction of emotional distress based on the evidence admitted at trial.
Accordingly, we reverse and remand for the trial court to vacate the jury’s verdict awarding damages regarding the claim for negligent infliction of emotional distress, and to enter a directed verdict on that issue in favor of Appellant. We affirm all other aspects of the verdict rendered in Appellees’ favor.
AFFIRMED in part, REVERSED in part, and REMANDED with instructions consistent with this opinion.
KAHN and VAN NORTWTCK, JJ„ concur.