652 So.2d 360 (1995)
R.J. and P.J., Petitioners,
v.
HUMANA OF FLORIDA, INC., etc., et al., Respondents.
No. 82743.
Supreme Court of Florida.
March 2, 1995.
*361 Marcia K. Lippincott of Marcia K. Lippincott, P.A., and Roy B. Dalton, Jr. of Martinez & Dalton, P.A., Orlando, for petitioners.
Robert A. Hannah and Michael C. Tyson of Hannah, Marsee, Beik & Voght, P.A., Orlando, Alan C. Sundberg, Tallahassee, and A. Broaddus Livingston and Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, and Shelley H. Leinicke of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Lane, P.A., Fort Lauderdale, for respondents.
Carl A. Cascio and Scott Mager of the Law Offices of Scott Mager, P.A., Fort Lauderdale, amicus curiae, for Academy of Fla. Trial Lawyers.
Kimberly A. Ashby of Maguire, Boorhis & Wells, P.A., Orlando, amicus curiae, for Fla. Defense Lawyers Ass'n.
OVERTON, Justice.
This is a petition to review R.J. v. Humana, Inc., 625 So.2d 116 (Fla. 5th DCA 1993), *362 in which the district court affirmed the trial court's holding that there was no physical impact sufficient to maintain a negligence action for an erroneous test showing that R.J. was HIV positive. In so holding, the district court certified the following question as one of great public importance:
DOES THE IMPACT RULE APPLY TO A CLAIM FOR DAMAGES FROM A NEGLIGENT HIV DIAGNOSIS?
Id. at 117. We have jurisdiction[1] and, for the reasons expressed, we answer the question in the affirmative, holding that damages for emotional harm as a result of a misdiagnosis cannot be recovered without a showing of some physical injury as a result of the misdiagnosis. Nevertheless, we find that R.J. should be allowed to amend the complaint to allege a cause of action consistent with the principles set forth in this opinion.
R.J.'s complaint alleges that on March 19, 1989, agents of Humana of Florida, Inc., d/b/a Humana Hospital-Lucerne (Humana), took blood from R.J.; that the blood was sent to Smithkline Beecham Clinical Laboratories, Inc. (Smithkline), for testing and analysis; that on March 30, 1989, Humana informed R.J. that the results of the blood test indicated that he was HIV positive; that Humana referred R.J. to Dr. William Robbins for medical care and treatment; that R.J. was not retested until he requested a new test approximately nineteen months later in November, 1990; and that this second test revealed that R.J. was not infected with the HIV virus. On these allegations, R.J. asserted that, through the negligence of Humana, Smithkline, and Dr. Robbins, he was incorrectly led to believe that he had contracted the HIV virus, "causing him to suffer bodily injury including hypertension, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and the reasonable expense of medical care and attention." The trial court dismissed the complaint with prejudice for failure to state a cause of action on the basis that it failed to meet the requirements of the impact rule.
On appeal, the Fifth District Court affirmed, noting that this Court has relaxed the requirement of the impact rule in a few limited situations but that the circumstances of this case did not fit into any of those excepted categories. The district court then certified the aforementioned question for a determination of whether the impact rule should apply to a case of negligent HIV diagnosis.
R.J. challenges the lower court's decision on three alternative grounds: (1) that the impact rule should be abolished; (2) that this Court should create an exception to the impact rule for cases involving negligent HIV diagnoses; or (3) that, if the impact rule does apply, sufficient facts are alleged in the complaint to meet the requirements of the impact rule.
The impact rule has had a long legal history in this state, beginning with this Court's decision in International Ocean Telegraph Co. v. Saunders, 32 Fla. 434, 14 So. 148 (1893). In essence, the impact rule requires that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992), review denied, 623 So.2d 494 (Fla. 1993). As explained by one commentator, the underlying basis for the rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims. 1 Thomas M. Cooley, Cooley on Torts 97 (3d ed. 1906). As this Court stated in Saunders, compensatory damages for emotional distress are "spiritually intangible," are beyond the limits of judicial action, and should be dealt with through legislative action rather than judicial decisions. 32 Fla. at 448, 14 So. at 152. Another commentator has stated that the requirement of a physical impact gives courts a guarantee that an injury to a plaintiff is genuine. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 363 (5th ed. 1984). Further, without an impact requirement, defendants would not be sure whom they had injured or where they may have injured a *363 person, thus paralyzing their ability to defend themselves. Id. at 364.
In recent years, we have continued to uphold the impact rule, finding that the underlying basis for the rule still exists and that no new reason has been shown to justify overruling prior decisions of this Court regarding this issue. For instance, in Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974), we found that an individual whose physical injuries were allegedly due to physical fright suffered when an automobile struck her house could not recover for those injuries because she had failed to show the requisite physical impact. Similarly, in Brown v. Cadillac Motor Car Division, 468 So.2d 903 (Fla. 1985), we found that the driver of a defective automobile that struck and killed the driver's mother had no cause of action for his mental distress because he sustained no physical injury. And, in Doyle v. Pillsbury Co., 476 So.2d 1271 (Fla. 1985), we held that impact in the form of ingestion of food must occur before one can recover for emotional damages as a result of finding an insect in food.
This does not mean that emotional injuries are never recoverable when a physical impact is not present. We have created limited exceptions. We expressly recognized the tort of intentional infliction of emotional distress under which emotional distress is recoverable even if no physical impact is present. See Eastern Airlines, Inc. v. King, 557 So.2d 574 (Fla. 1990); Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985). In Eastern Airlines, we explained the application of a claim for intentional infliction of emotional distress, noting that an intentional infliction claim is only viable when the conduct causing the emotional distress is outrageous.[2] As Justice Ehrlich noted in his concurring opinion in Eastern Airlines, however, the impact rule has remained a part of the law of this state. 557 So.2d at 579 (Ehrlich, C.J., concurring). Additionally, in Champion v. Gray, 478 So.2d 17 (Fla. 1985), we held that psychological trauma and mental distress are recoverable as elements of damage without direct physical impact in cases where a plaintiff was in the sensory perception of physical injuries negligently imposed upon a close family member and where the plaintiff suffered a discernible physical injury. More recently, in Kush v. Lloyd, 616 So.2d 415, 422 (Fla. 1992), we held that the impact rule should not be applied to actions for wrongful birth where emotional damages are the "`parasitic' consequence of conduct that itself is a freestanding tort." In carving these exceptions to the impact rule in both Champion and Kush, we nevertheless reaffirmed the appropriateness of the impact rule in most circumstances and carefully restricted the exceptions.
We reaffirm today our conclusion that the impact rule continues to serve its purpose of assuring the validity of claims for emotional or psychic damages, and find that the impact rule should remain part of the law of this state. Consequently, we reject R.J.'s request that we abolish the impact rule. We also reject R.J.'s argument that, as a matter of public policy, this Court should create a limited exception to the impact rule for a negligent HIV diagnosis.
Without question, allowing compensation for emotional distress in the absence of a physical injury under the circumstances of this case would have a substantial impact on *364 many aspects of medical care, including the cost of providing that care to the public. Were we to create such an exception, we would, of necessity, also be allowing a claim for emotional distress for any misdiagnosis made from negligent medical testing. We could not limit an exception for negligent misdiagnosis to cases specifically involving the HIV virus while excluding other terminal illnesses. Moreover, it would be exceedingly difficult to limit speculative claims for damages in litigation under such an exception. Given that the underlying policy reasons for the impact rule still exist, we find that no special exception is justified under the circumstances of this case.
Finally, we reject R.J.'s argument that his second amended complaint contains sufficient allegations to meet the requirements of the physical impact rule. As previously indicated, R.J. claimed that, as a result of the misdiagnosis, he suffered "bodily injury including hypertension, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and the reasonable expense for medical care and attention." We find that these intangible, mental injuries are insufficient to meet the physical injury required under the impact rule. We do recognize, however, that a negligent misdiagnosis such as the one at issue could result in unnecessary and harmful medical treatment that does in fact cause bodily injury, which, in turn, would satisfy the requirements of a physical impact. Although we find that the touching of a patient by a doctor and the taking of blood for ordinary testing would not qualify for a physical impact, other more invasive medical treatment or the prescribing of drugs with toxic or adverse side effects would so qualify. If R.J. can establish that the misdiagnosis in this case led to invasive medical treatment or prescriptions of caustic medication such as Azidothymidine (commonly known as "AZT"), and that he suffered bodily injury from that treatment, then he would have met the requirements of the impact rule and would be able to recover for the emotional trauma suffered as a result of that treatment.
We note that R.J. has had four opportunities to state a cause of action in this case. Ordinarily, when a plaintiff has had multiple opportunities to state a case of action, we would not allow a further amendment to the plaintiff's complaint. Given this unique factual situation, however, we find that R.J. should have an opportunity to state a claim under the principles set forth in this opinion.
Accordingly, we answer the certified question in the affirmative, quash the district court's decision to the extent that it is inconsistent with this opinion, and return this case to the district court with directions that it remand the case to the trial court to allow R.J. to amend the complaint.
It is so ordered.
GRIMES, C.J., SHAW and HARDING, JJ., and McDONALD, Senior Justice, concur.
KOGAN, J., concurs specially with an opinion.
KOGAN, Justice, specially concurring.
Any analysis of the impact rule must begin by placing it in its historical context. As traditionally conceived, the impact rule required that the negligent act itself (1) created a direct and immediate physical impact (2) that proximately and foreseeably caused a physical injury (3) that caused or was associated with psychological distress. See, e.g., Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992), review denied, 623 So.2d 494 (Fla. 1993). Here was the nub of the rule: Absent the impact, the injury might be compensable but the distress was not. With impact, both were compensable. One judge described the underlying policy in the following terms:
There must be some level of harm which one should absorb without recompense as the price he pays for living in an organized society.
Stewart v. Gilliam, 271 So.2d 466, 477 (Fla. 4th DCA 1972) (Reed, C.J., dissenting), quashed 291 So.2d 593 (Fla. 1974).
From its inception, the impact rule essentially imposed a temporal element necessary for recovery: The negligent act had to inflict an immediate impact, not merely an injury at some remove. One of the more frequent *365 fact patterns in the case law was of pregnant women who suffered a fright and then miscarried some time later. In the early days of the impact doctrine, the courts in England and the United States seemed quite uniform in denying liability in these cases, based on the impact doctrine. W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 54, at 363 (5th ed. 1984). This was because there was injury (the miscarriage) but no immediate "impact."
Beginning at the end of the last century, a number of jurisdictions became heartily dissatisfied with the obvious harshness of the impact rule. As a result, many courts strained the rule well beyond its limits in an effort to achieve justice. The leading authority in American tort law pokes considerable fun at some of the absurdities the rule engendered. Among the events courts found to be "impacts" are dust in the eye, inhalation of smoke, and a circus animal "evacuat[ing] his bowels" into a plaintiff's lap. W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 54, at 363-64 (5th ed. 1984).
As a result of this dissatisfaction, a new and more reasonable rule emerged that now is recognized in more than thirty states. Gonzalez v. Metropolitan Dade County Public Health Trust, 651 So.2d 673 at 674 & n. 1 (Fla. 1995). It can be described as the "actual-injury" rule.[3] While some have characterized this new rule as a major departure, it actually is not. All that it did was eliminate the impact requirement  the temporal element  which already was being ignored in a number of creative if disingenuous ways. Under this second rule, a plaintiff must prove that the negligent act itself (1) proximately and foreseeably caused an injury (2) that caused or was associated with psychological distress. If an injury existed, then recovery for the distress also was allowed. Without injury, there could be no recovery.
A few states have gone further by eliminating the injury requirement, thereby establishing negligent infliction of emotional distress as a freestanding tort. But the actual-injury rule nevertheless remains the controlling law in the clear majority of American jurisdictions. Id. Florida has never recognized negligent infliction of emotional distress as a freestanding tort.
I think that this Court's discussion of the impact rule in recent years has lost sight of the fact that there are three different rules states have adopted, not merely two. The majority falls into this mistake when it argues that the only alternative to the impact rule would be to permit recovery "in the absence of physical injury." Majority op. at 363. Having said this, the majority then proceeds to hold that a cause of action nevertheless exists if misdiagnosis results in inappropriate medical care that in turn causes "bodily injury." Majority op. at 364; accord Kush v. Lloyd, 616 So.2d 415, 422-23 (Fla. 1992).
I frankly have some difficulty saying that the "impact" identified by the majority here can be considered the direct and immediate consequence of the negligent act, at least in the classic sense. The temporal element of the traditional impact rule meant that the negligent act and the impact must occur virtually simultaneously. Here, such is not the case. While the record is not clear, it is susceptible of a construction that the negligent blood test may have resulted in many months of inappropriate medical treatment, which caused an injury. But characterizing this as an "impact" would not be accurate, any more than would so characterizing the loss of a fetus in the miscarriage cases. The majority is blurring the concepts of "impact" and "injury," and thereby may be abrogating the Florida impact rule in actual effect.
The distinction between impact and injury is a crucial one if the majority actually believes it is preserving the impact rule by today's opinion. I think this conclusion is especially compelling in light of a contemporaneous case this Court is deciding. In Gonzalez, 651 So.2d at 674, the Court expressly distinguishes the impact rule and the actual-injury rule in the same terms I have used above. Yet, we are not fully honoring the distinction in practice, as several other cases *366 also demonstrate. Kush, 616 So.2d at 422-23.
I do not quarrel with the result the majority reaches. If misdiagnosis proximately and foreseeably causes a person to receive inappropriate treatment, then a cause of action should and does exist in Florida both for the injury sustained and the emotional distress suffered. This is true whether or not there is an "impact," because any other result would be inherently unfair and contrary to the central policies of tort law. Id. at 424 (tort law meant to put injured party in nearly the state that would have existed absent negligent injury). Yet, I also think the time has come for us to acknowledge the confusion caused by our case law when we mistakenly and vehemently "reaffirm" the impact rule while we ourselves actually seem to be laying it in the grave.
Today's decision may well be distinguished on its facts or limited to misdiagnosis cases. But I do not see how we can tacitly equate impact and injury without ultimately doing so in every other negligent-infliction case. When that day comes, Florida will honor the impact rule in name only, and the actual-injury rule will otherwise prevail. Indeed, that day may already have arrived.
NOTES
[1] Art. V, § 3(b)(4), Fla. Const.
[2] In McCarson, we approved section 46 of the Restatement (Second) of Torts (1965), which provides in pertinent part:

d. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
... .
i. Intention and recklessness. The rule stated in this Section applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts reckless, as that term is defined in § 500, in deliberate disregard of a high degree of probability that the emotional distress will follow.
[3] There has been much debate over the definition of the word "injury." We need not address that question today, because a patient receiving improper and potentially dangerous medical treatment clearly would suffer an actual "injury" within the meaning of the law.