884 So.2d 206 (2004)
Lisa M. ABRIL and Roberto Abril, Appellants,
v.
DEPARTMENT OF CORRECTIONS, Appellee.
No. 2D03-3123.
District Court of Appeal of Florida, Second District.
July 30, 2004.
Dick W. Mount, Jr., Minerva, OH, for Appellants.
*207 Charles J. Crist, Jr., Attorney General, Tallahassee, and David J. Glantz, Assistant Attorney General, Fort Lauderdale, for Appellee.
CANADY, Judge.
Lisa M. Abril and her husband, Roberto Abril, appeal an order of the trial court dismissing their amended complaint against the Florida Department of Corrections (the department). Because we conclude that the complaint stated a cause of action, we reverse.

I. BACKGROUND
The amended complaint alleged that Mrs. Abril, in the course of her employment with the department as a senior licensed practical nurse at the Hendry County Correctional Institution, had given unprotected mouth-to-mouth resuscitation to an inmate. After it was determined that the inmate was infected with hepatitis C and that it was unknown whether the inmate was infected with HIV, Mrs. Abril unsuccessfully sought testing for hepatitis and HIV through the department's workers' compensation carrier, which declined to authorize the testing because it determined that the resuscitation did not expose her to a risk of infection. Subsequently, the institution's chief medical officer submitted a blood sample from Mrs. Abril to Continental Laboratory, a laboratory under contract with the State of Florida to provide clinical laboratory services for inmates for HIV testing.
The complaint further alleged that a document indicating that the test results for HIV were positive was faxed to an unsecured fax machine in the institution's business office and to another fax machine in Tallahassee at the department's offices of Chief Health Services, despite Continental Laboratory's assurances set forth in a prior fax to a "confidentially-secured" fax machine in the institution's medical office that the results of the test were confidential and would be hand delivered. It was alleged that the faxes with the test results were sent in response to a request for the information from a department employee who was concerned that the use of Continental Laboratory for the testing of Mrs. Abril's blood might not have been authorized. The complaint also alleged that a number of persons employed by the department, who were not authorized by law to know of the test results, became aware of the test results through Continental Laboratory's transmission of the results to the fax machines. It was ultimately determined through testing, paid for by the workers' compensation carrier, that Continental Laboratory's HIV test on Mrs. Abril's blood had produced a false positive and that Mrs. Abril had not in fact contracted HIV.
In count I of the complaint, Mrs. Abril sought damages for mental anguish and emotional distress arising from Continental Laboratory's alleged negligent failure to follow proper procedures to maintain the confidentiality of the HIV test results. Count I claimed that the department was liable for Continental Laboratory's negligence pursuant to section 768.28(10)(a), Florida Statutes (Supp.1996), which provides that
[h]ealth care providers or vendors, or any of their employees or agents[] that have contractually agreed to act as agents of the [department] to provide health care services to inmates of the state correctional system shall be considered agents of the [department] for the purposes of [section 768.28, Florida's sovereign immunity waiver statute], while acting within the scope of and pursuant to guidelines established in said contract or by rule.
*208 In count II of the complaint, Mrs. Abril also sought damages for the negligence of the department and its employees in causing the test results to be improperly disseminated. However, Mrs. Abril does not argue on appeal that dismissal of this claim was improper. Consequently, we will not further address the dismissal of count II.
In count III of the complaint, Mr. Abril (who was a prison guard at the same institution as his wife) claimed damages for mental anguish and emotional distress arising from the disclosure of the test results. In count IV, Mr. Abril sought damages for loss of consortium. The complaint also contained a certification by the Abrils' counsel of compliance with all medical malpractice presuit requirements, as well as a statement of compliance with the requirements set forth in section 768.28(6) concerning actions against the state.
The department filed a motion to dismiss the complaint on the ground that there was no statutory or common law duty for a laboratory or governmental entity to protect the confidentiality of HIV test results. The department also argued that the complaint should be dismissed because section 381.004, Florida Statutes (Supp.1996), which provides for criminal penalties and certain administrative sanctions for unlawful disclosure of HIV test results, does not authorize a private cause of action for such disclosure.
The trial court granted the motion to dismiss, concluding that "there has not been established in the State of Florida any common law or statutory duty of care which requires a governmental entity to protect the confidentiality of HIV test results." The trial court also concluded that section 381.004 "provides criminal penalties for improper disclosure of HIV test results[] but does not authorize a private cause of action for such disclosure."

II. ISSUES ON APPEAL
The Abrils argue that the department is vicariously liable for Continental Laboratory's negligent breach of its duty to maintain the confidentiality of Mrs. Abril's test results. The department argues that there is no private cause of action for the breach of such a legal duty. The department also contends that any claim by the Abrils arising from their mental anguish and emotional distress is barred by the impact rule. The Abrils contend that the impact rule is not applicable to their claims which are based on Continental Laboratory's negligent breach of its duty to maintain the confidentiality of Mrs. Abril's test results.

III. ANALYSIS
Section 381.004 contains a series of provisions governing HIV testing. Section 381.004(3)(f) provides that, subject to certain exceptions not pertinent here, "the identity of any person upon whom [an HIV] test has been performed and [the] test results are confidential" and that "[n]o person who has obtained or has knowledge of a test result pursuant to [section 381.004] may disclose ... the identity of any person upon whom a test is performed[] or the results of such a test in a manner which permits identification of the subject of the test" except as specifically authorized by law. Penalties for the violation of the provisions of section 381.004 are set forth in section 381.004(6). Under section 381.004(6)(a), "licensed health care provider[s]" violating the statute are subject to "disciplinary action." Under section 381.004(6)(b), "[a]ny person who violates the confidentiality provisions" of the statute "commits a misdemeanor of the first degree." The statute makes no mention of private causes of action arising *209 from violations of its provisions.[1]
When a statute creates a clear duty of care, the violation of that duty can "generate[ ] a viable cause of action in tort." Gracey v. Eaker, 837 So.2d 348, 353 (Fla.2002); see also deJesus v. Seaboard Coast Line R.R. Co., 281 So.2d 198 (Fla. 1973) (discussing imposition of tort liability for violation of statutory duty); Lewis v. City of Miami, 127 Fla. 426, 173 So. 150, 152 (1937) (citing Restatement (First) of Torts section 286 (1934) statement of circumstances where violation of statutory duty will give rise to tort liability); Golden Shoreline Ltd. v. McGowan, 787 So.2d 109 (Fla. 2d DCA 2001) (discussing types of negligence per se that may arise from statutory violation); Newsome v. Haffner, 710 So.2d 184, 186 (Fla. 1st DCA 1998) (stating that "a cause of action in negligence per se is created when a penal statute is designed to protect a class of persons, of which the plaintiff is a member, against a particular type of harm").
The circumstances in which a statutory provision will establish potential tort liability are set forth in Restatement (Second) of Torts section 286 (1965):
The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment... whose purpose is found to be exclusively or in part
(a) to protect a class of persons which includes the one whose interest is invaded, and
(b) to protect the particular interest which is invaded, and
(c) to protect that interest against the kind of harm which has resulted, and
(d) to protect that interest against the particular hazard from which the harm results.
See also Restatement (Second) of Torts section 288 (discussing circumstances in which "requirements of a legislative enactment" will not be adopted "as the standard of conduct of a reasonable man").
Here, the department has argued in essence that a tort cause of action can never arise from the violation of a statute unless the statute expressly authorizes such a cause of action. The department's position is not supported by the case law set forth above. As we will further discuss below, in Gracey the supreme court held that a tort action arose from the violation of a statutory duty of confidentiality closely analogous to the statutory duty at issue in this case. The department makes no argument that the claims asserted in the instant case do not satisfy the requirements set forth in Restatement (Second) of Torts section 286 (1965).
The complaint filed by the Abrils alleges facts that would be sufficient to establish that Continental Laboratory violated *210 a duty imposed on it by section 381.004 to maintain the confidentiality of HIV test results and to disclose those results only as authorized by law. The issue presented for resolution thus is not whether the complaint's allegations are sufficient to establish the necessary elements of the existence of a duty and the breach of that duty. The dispositive question is whether the damages allegedfor mental anguish and emotional distress caused by Continental Laboratory's breach of its duty are cognizable under Florida law. The answer to this question depends on whether the impact rule is applicable to the claims at issue.
"The impact rule has had a long legal history in this State, beginning with [the supreme court's] decision in International Ocean Telegraph Co. v. Saunders, 32 Fla. 434, 14 So. 148 (1893)." R.J. v. Humana of Fla., Inc., 652 So.2d 360, 362 (Fla.1995). In Saunders, 14 So. at 152, the supreme court held that a claim for "mental suffering" arising from "the breach by the defendant telegraph company of its contract to promptly deliver a telegram summoning [the plaintiff] to the deathbed of his wife" was for an injury "that soars so exclusively within the realms of spirit land that it is beyond the reach of the courts to deal with, or to compensate by any of the known standards of value." The court stated the general rule applicable to simple negligence cases:
[M]ental suffering was never allowed to be considered as an element of damages for which pecuniary compensation could be awarded, except ... in cases of torts, where there was some physical injury and bodily suffering, in which cases ... the mental suffering, incident to, connected with, and[] flowing directly from the physical injury was permitted to be considered in connection with the physical pain, both taken together, but not the one disconnected from the other. Id. at 151. Ultimately, the requirement set forth in Saunders for "some physical injury," id. at 154, came to be known in Florida law as the "impact rule." See Gilliam v. Stewart, 291 So.2d 593, 594-95 (Fla.1974); Hollie v. Radcliffe, 200 So.2d 616 (Fla. 1st DCA 1967). "As explained by one commentator, the underlying basis for the rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims." R.J., 652 So.2d at 362 (citing Thomas M. Cooley, Cooley on Torts 97 (3d ed.1906)).
In a series of recent cases, the supreme court has "review[ed] the continued vitality of the impact rule[ ] and has consistently reaffirmed that the rule serves an important safeguard when applied under certain proper circumstances in our judicial system." Rowell v. Holt, 850 So.2d 474, 478 (Fla.2003). The supreme court has not, however, viewed the impact rule as "an inflexible, unyielding rule of law." Id. Instead, the court has undertaken an examination of the appropriateness of applying the rule in various contexts. The court's flexible approach to the application of the impact rule has led the court to establish certain "[e]xceptions to the rule." Id. These "[e]xceptions to the rule have been narrowly created and defined in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale undergirding application of the impact rule." Id.
The result has been that the impact rule has remained in place as a general restriction on claims for emotional distress damages but has been displaced in certain limited contexts where it previously was applied. In short, the reach of the rule has been reduced on an ad hoc basis as the *211 court has weighed the merits of applying or not applying the rule to particular circumstances.
There are no cases directly addressing the application of the impact rule to a claim arising from the alleged violation of the confidentiality provision of section 381.004(3)(f). The supreme court has, however, addressed the issue of whether the impact rule should be applied to a claim arising from the violation of an analogous statutory confidentiality provision. In Gracey, the court considered whether the impact rule should be applied to bar a claim for emotional injuries arising from the wrongful disclosure of confidential information by a psychotherapist. The court held that "the impact rule is inapplicable in cases in which a psychotherapist has created a fiduciary relationship and has breached a statutory duty of confidentiality to his or her patient." Gracey, 837 So.2d at 357. In reaching this conclusion, the court stated that it was "simply hold[ing] that the impact rule is inapplicable under the particular facts of the case before us" and that its "holding should not be construed as bringing into question the continued validity of the impact rule in other situations." Id. at 358.
The court's analysis in Gracey focused on the alleged "breach of a duty of confidentiality" which arose from "a statutory confidential relationship." Id. at 350-51. The court gave particular attention to the provisions of section 491.0147, Florida Statutes (1997), which "require[ ] psychotherapists to keep confidential the substance of patient communications." Id. at 351 n. 2. The court reasoned that since "the statute unambiguously indicates the intent of the Legislature to protect from unauthorized disclosure the confidences reposed by a patient in his or her psychotherapist" the plaintiffs were entitled to bring suit "under the common law for a breach of duty that was imposed by statute." Id. at 351. The court rejected the argument that the absence of an explicit authorization in the statute of private causes of action barred the plaintiffs' action for violation of the statute. And the court specifically concluded that application of the impact rule to bar a claim for violation of section 491.0147 would "not accommodate the intent and purpose of" the statute, but would "render[] its protection meaningless." Id. at 351. In support of its conclusion that application of the impact rule would be inappropriate, the court also observed that "[t]he only reasonable and logical injuries generally flowing from a violation of the statutory protection are emotional in nature." Id. at 357.
The Gracey court also drew an analogy between the harm suffered when confidential information is disclosed by a psychotherapist and the harm that results from a defamation or invasion of privacy. The "emotional distress" suffered by a person whose secrets are revealed by a psychotherapist "is at least equal to that typically suffered by the victim of a defamation or an invasion of privacy." Id. The court focused not only on the extent of the mental suffering but also on the likelihood that emotional distress would in fact arise from a particular breach of duty. "[W]e can envision few occurrences more likely to result in emotional distress than having one's psychotherapist reveal without authorization or justification the most confidential details of one's life." Id. Since "the impact doctrine ... generally is inapplicable to recognized torts in which damages often are predominately emotional, such as defamation or invasion of privacy," Kush v. Lloyd, 616 So.2d 415, 422 (Fla.1992), the Gracey court reasoned that claims for the similar emotional distress arising from the disclosure of confidential information by a *212 psychotherapist should likewise not be subject to the impact rule.
In the absence of a precedent from the supreme court directly addressing the application of the impact rule to claims for violations of the confidentiality requirement of section 381.004(3)(f), we conclude that the reasoning of the Gracey decision compels the conclusion that the impact rule should not be applied to such claims.[2] We base our conclusion on the weight given by the Gracey court both to the legislature's establishment of a statutory duty of confidentiality and to the analogy between the nature of the harm suffered as a consequence of the disclosure of confidential information and the harm arising from invasion of privacy and defamation. Further, following Rowell, 850 So.2d at 478, we conclude that Gracey controls the instant case because there is no legally significant distinction between the "foreseeability and gravity of the emotional injury involved" in the instant case and the "foreseeability and gravity of the emotional injury involved" in Gracey. In addition, the apparent "policy concerns" identified by Rowell as relevant to providing an exception from the impact rule are the same in this case as they were in Gracey.
The confidentiality provisions of section 491.0147 and section 381.004(3)(f) serve the same purpose: to protect individuals from the unwarranted disclosure of highly sensitive information concerning their personal lives. The harm flowing from a violation of confidentiality by a psychotherapist is closely akin to the harm flowing from a breach of confidentiality with respect to an HIV test. "The only reasonable and logical injuries generally flowing from a violation" of either section 491.0147 or section 381.004(3)(f) "are emotional in nature." Gracey, 837 So.2d at 357. In addition, "the legislative intent and its statutory implementation" would be rendered "meaningless and without substance" just as much by application of the impact rule to claims based on violation of the confidentiality requirement for HIV tests as it would by application of the rule to claims based on a psychotherapist's breach of confidentiality. Id. Similarly, the analogy to claims for invasion of privacy and defamation applies as much to claims for breaches of confidentiality with respect to HIV tests as it does to claims for breaches of confidentiality by a psychotherapist. Finally, whether a claim arises under section 381.004(3)(f) or section 491.0147, the emotional injury that results from the breach of confidentiality meets the standard of "foreseeability and gravity" of harm discussed in Rowell, 850 So.2d at 478, as a basis for not applying the impact rule. And "countervailing policy concerns"that is, policy concerns militating against establishing an exception from the impact ruleare no more apparent with *213 respect to section 381.004(3)(f) than with respect to section 491.0147. Rowell, 850 So.2d at 478. In short, there is no principled basis for barring civil actions based on a breach of the statutory duty in section 381.004(3)(f) if civil actions based on a violation of section 491.0147 are not barred.
We acknowledge that the Gracey court discussed at length the existence of a fiduciary relationship between the plaintiffs and the psychotherapist who allegedly violated his fiduciary duty by improperly divulging confidential information. In the instant case, no allegations have been made that a fiduciary relationship existed between the Abrils and Continental Laboratory. The absence of allegations that a fiduciary relationship existed is not, however, sufficient to distinguish the instant case from Gracey. The significance of the existence of a fiduciary relationship resides in the duties that arise from that relationship. Whether or not Continental Laboratory had a fiduciary relationship with the Abrils, the existence of a duty on the part of Continental Laboratory to maintain the confidentiality of information relating to Mrs. Abril's HIV test is unquestioned. Mrs. Abril's interest in Continental Laboratory's compliance with that duty was as compelling as the interests of the Graceys in the compliance by their psychotherapist with the duty of confidentiality which arose in the context of a fiduciary relationship.
Given the close similarity of the interests involved here with the interests at issue in Gracey, the rationale of Gracey requires that the impact rule not be applied in the instant case. We therefore conclude that the trial court erred in dismissing the claims that the Abrils have argued were improperly dismissed.[3]

IV. CERTIFIED QUESTION
In light of the incremental approach the supreme court has adopted in addressing limitations on the application of the impact rule, we certify pursuant to article V, section 3(b)(4), Florida Constitution, and Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v) that the following question upon which this decision passes is one of great public importance.
IS FLORIDA'S IMPACT RULE APPLICABLE IN A CASE IN WHICH IT IS ALLEGED THAT THE INFLICTION OF EMOTIONAL INJURIES HAS RESULTED FROM A CLINICAL LABORATORY'S BREACH OF A DUTY OF CONFIDENTIALITY UNDER SECTION 381.004(3)(f), FLORIDA STATUTES (SUPP.1996), WITH RESPECT TO HIV TEST INFORMATION?

V. CONCLUSION
Based on our conclusion that the rationale of Gracey is applicable here, we reverse the trial court's order insofar as it dismissed counts I, III, and IV of the complaint. The case is remanded for further proceedings on those claims. Since the Abrils have made no argument on *214 appeal with respect to count II, the dismissal of that count of the complaint is affirmed.
Affirmed in part, reversed in part, and remanded.
CASANUEVA and WALLACE, JJ., concur.
NOTES
[1] Provisions governing the licensure and regulation of clinical laboratories are set forth in the Florida Clinical Laboratory Law, sections 483.011 et seq., Florida Statutes (1995). Section 483.181 contains provisions regarding the "[a]cceptance, collection, identification, and examination of specimens" by clinical laboratories. Section 483.181(2) provides that "[t]he results of a test must be reported directly to the licensed practitioner or other authorized person who requested it." Section 483.221 authorizes the imposition for various administrative penalties "for the violation of any provision of [the Florida Clinical Laboratory Law] or rules adopted [thereunder]." Section 483.23(1)(a)(4) makes it unlawful for any person to "[v]iolate or aid and abet in the violation of any provision of" the statute or the rules adopted thereunder. Under section 483.23(1)(b), offenses under 483.23(1)(a) are "misdemeanor[s] of the second degree." Since we have determined that a duty to maintain confidentiality pursuant to section 381.004(3)(f) is applicable to this case, we need not address the application of the Florida Clinical Laboratory Law.
[2] We note that R.J. has a superficial similarity to the instant case. In R.J., the supreme court addressed a claim for emotional damages arising from "a negligent HIV diagnosis" in which the plaintiff alleged that "he was incorrectly led to believe that he had contracted the HIV virus." 652 So.2d at 362. The court held that "damages for emotional harm as a result of a misdiagnosis cannot be recovered without a showing of some physical injury as a result of the misdiagnosis." Id. R.J. thus involved a factual elementan erroneous HIV testthat is also present in the instant case. The similarity between R.J. and the instant case ends at that point. The nature of the Abrils' breach of confidentiality claim is entirely different from the misdiagnosis claim in R.J. The policy concerns relevant to establishing an exception from the impact rule for misdiagnosis claims are quite different from the concerns associated with establishing such an exception for breach of confidentiality claims. We further note that the inaccuracy of the HIV test results was not the basis for the claims in the instant case. The claims for breach of confidentiality could arise whether the information disclosed was accurate or inaccurate.
[3] We note that the department in support of its motion to dismiss has not made any separate argument concerning the viability of Mr. Abril's claims in counts III and IV but has relied on its argument that there can be no private civil cause of action arising from the breach of confidentiality at issue. Since no argument has been presented regarding Mr. Abril's standing to assert his independent claim for emotional damages in count III, we have had no occasion to address that issue. With respect to count IV, we simply note that "the impact rule is not applied to claims for loss of consortium." Gracey, 837 So.2d at 356 n. 13.

We also note that the department has made no argument concerning the applicability of section 768.28(10)(a) to the specific facts of this case. We thus have not addressed that question.