[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10245
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cv-24919-FAM


EDWIN DIAZ,

Plaintiff - Appellant,

versus

MIAMI-DADE COUNTY,
MATTHEW FRYER,
In his Official Capacity as Sergeant,
Miami-Dade Police Department,
HOWARD ROSEN,
Individually and in his official capacity as
Deputy Chief of the Special Prosecution for
the Miami-Dade State Attorney,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 4, 2021)

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Edwin Diaz, a Miami-Dade County police officer, appeals the district court's order dismissing with prejudice his second amended complaint, which found, in relevant part, that: (1) his claim for false arrest under 42 U.S.C. § 1983 against Sergeant Matthew Fryer was barred by qualified immunity; (2) he failed to state a claim for municipal liability under § 1983 against Miami-Dade County; (3) his § 1983 claim against Deputy Chief Assistant State Attorney Howard Rosen was barred by qualified immunity; (4) his Florida Statute § 112.532 claim against Rosen for money damages was precluded by state law; and (5) he failed to state a claim for negligent inflection of emotional distress under Florida law against any defendant. Diaz also appeals the district court's denial of leave to amend.

## Factual and Procedural Background

Because this case is before us as an appeal from a motion to dismiss, we must accept the facts alleged in the second amended complaint and construe them in the light most favorable to the plaintiff. *See Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1032–33 (11th Cir. 2008). Accordingly, the following statement of facts is taken from Diaz's second amended complaint.

In early 2016, Officer Diaz, a twenty-year veteran working in the Narcotics Bureau of the Miami-Dade Police Department (MDPD), became the subject of an internal investigation. The investigation came in the wake of several high-profile arrests of MDPD police officers and was an effort to preserve the public trust and avoid further embarrassment. The MDPD worked in conjunction with the Florida Department of Law Enforcement and the Miami-Dade State Attorney's Office. The investigation into Diaz was based on allegations that he, along with other officers in the Narcotics Bureau, was stealing money and other valuables from crime scenes. The County focused its investigation on Diaz as he had been named in six prior theft complains over a ten-year period. All of these complaints were dismissed either because the allegations were unfounded or because they could not be corroborated. Despite this, the County authorized Sergeant Matthew Fryer to apply for a search warrant citing the six prior complaints against Diaz as probable cause. The search warrant was granted, and the investigation ultimately culminated in a sting operation, the roadside search and seizure of Diaz's person and car, and the interrogation and arrest of Diaz.

The State Attorney's Office ultimately decided that there was insufficient evidence to prosecute Diaz. Unsatisfied with this outcome, Deputy Chief Assistant State Attorney Howard Rosen attended a roll-call meeting at MDPD's Narcotics

3

Bureau on May 6, 2016. There, in the presence of more than forty police officers, Rosen accused Diaz of stealing from crime scenes.

In his second amended complaint, Diaz claims that through their combined efforts, Defendants Miami-Dade County (the County), Sergeant Matthew Fryer (Fryer), and Deputy Chief Assistant State Attorney Howard Rosen (Rosen) "have destroyed Officer Diaz's personal reputation and professional standing."

Diaz brought suit against the County, Fryer, and Rosen in the District Court for the Southern District of Florida, asserting five counts: (1) violation of § 1983 for false arrest against Defendant Fryer; (2) violation of § 1983 for false arrest against Defendant Miami-Dade County; (3) violation of § 1983 for defamation against Defendant Rosen; (4) violation of the Florida Law Enforcement Officers' Bill of Rights against defendant Rosen; and (5) state law claim of negligent inflection of emotional distress against all defendants. Defendants the County, Fryer, and Rosen moved to dismiss. The district court entered an order granting the dismissal of all five counts with prejudice on December 19, 2019. This appeal followed.

## **Legal Standard**

### *A. Motion to Dismiss*

We review de novo an order granting a motion to dismiss with prejudice, accepting the factual allegations in the complaint as true and construing them in the

4

light most favorable to the plaintiff. *Young Apartments*, 529 F.3d at 1037. "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions . . . ." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). Those factual bases "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B. Qualified Immunity

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). Qualified immunity is an affirmative defense that must be pled by the defendant official and can be raised and considered in a motion to dismiss. *See Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). "[I]t is proper to grant a motion to dismiss on qualified immunity grounds when the complaint fails to allege the violation of a clearly established constitutional right." *Id.* (internal quotation marks omitted).

"To obtain a dismissal based on qualified immunity, a government official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (internal quotation marks omitted). To overcome a

qualified immunity defense, the plaintiff must then show (1) that the defendant violated a constitutional right, and (2) that the violated right was "clearly established." *Corbitt*, 929 F.3d at 1311. These two prongs can be addressed in any order. *See Washington v. Rivera*, 939 F.3d 1239, 1245 (11th Cir. 2019).

The grant of qualified immunity is a question of law that is reviewed de novo. *Courson v. McMillian*, 939 F.2d 1479, 1486 (11th Cir. 1991).

## Legal Analysis

### *A. Count 1: 42 U.S.C. § 1983 Claim Against Fryer*

The first count in Diaz's second amended complaint is against Sergeant Fryer for false arrest under § 1983. Diaz alleges that Fryer is liable for false arrest because he was responsible for preparing the affidavit in support of the search warrant application a week earlier. Diaz claims Fryer included the six prior complaints against Diaz in the warrant application, intentionally omitting the fact that each allegation had been dismissed. The act of submitting this warrant application with knowingly false information is the alleged constitutional violation forming the basis for Diaz's § 1983 claim against Fryer.

As stated above, qualified immunity is an affirmative defense that can be raised on a motion to dismiss and will be granted if the complaint "fails to allege the violation of a clearly established constitutional right." *Corbitt*, 929 F.3d at 1311. An officer cannot be held liable for false arrest under § 1983 if the officer

6

did not participate in the actual arrest or was not in the chain of command supervising the arresting officer. *Brown v. City of Huntsville*, 608 F.3d 724, 736–37 (11th Cir. 2010) (concluding that a grant of qualified immunity to two officers was proper because "[m]erely being present with the arresting officers at the scene is not enough, unless the plaintiff can show that the defendant officer was part of the chain of command authorizing the arrest action").

Here, Diaz admits in his response to the motion to dismiss that his "Second Amended Complaint does not allege that Defendant Fryer supervised the investigation at the heart of his lawsuit, nor is there any allegation that he acted in any other supervisory capacity." Diaz's second amended complaint also contains no allegations that Fryer actually participated in the arrest. Because Diaz's complaint does not establish that Fryer violated his clearly established constitutional rights, we find Diaz has not overcome Fryer's qualified immunity defense. Diaz's allegations do not establish that Fryer was the arresting officer or that he was in the chain of command. Sergeant Fryer is therefore entitled to qualified immunity against Diaz's § 1983 false arrest claim.

## B. Count 2: 42 U.S.C. § 1983 Claim Against Miami-Dade County

While the Supreme Court has held that local government entities are "persons" within the scope of § 1983, and thus subject to liability, Diaz cannot rely on a theory of respondeat superior to hold the County liable. *McDowell v. Brown*,

392 F.3d 1283, 1289 (11th Cir. 2004); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978) (finding that a county does not incur § 1983 liability for injuries caused solely by its employees). "It is only when the execution of the government's policy or custom . . . inflicts the injury that the [county] may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (omission in original and internal quotation marks omitted). Thus, to impose § 1983 liability on the County, Diaz must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell*, 392 F.3d at 1289. To successfully prove a policy or custom, it is generally necessary for a plaintiff to demonstrate "a persistent and wide-spread practice." *Id.* at 1290. This threshold burden "prevents the imposition of liability based upon an isolated incident." *Id.*

Here, Diaz did not state a valid § 1983 claim for false arrest under *Monell* and its progeny because his second amended complaint is based on his sole incident of arrest, which is not sufficient to satisfy the "custom or policy" prong necessary to impose § 1983 liability on the County. The allegations in his complaint focus on the government's investigation into Diaz and the actions the government took over the course of a one-week period. Diaz does not explain how the actions taken by the County—a search warrant application, a sting operation,

8

and an arrest—amount to a "persistent and wide-spread practice" resulting in the deprivation of a constitutional right. *See id.* The allegations in Diaz's complaint simply do not rise to a wide-spread practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Accordingly, the district court correctly dismissed Count 2 against the County.

### C. Count 3: 42 U.S.C. § 1983 Claim Against Rosen

Count 3 is a defamation claim under § 1983 against defendant Howard Rosen. The defamation claim against Rosen arises out of the statements he made during the pre-shift roll call meeting at the Miami-Dade Narcotics Bureau on May 6, 2016. Diaz's § 1983 claim asserts that, despite having already decided not to prosecute him, Rosen advised approximately 40 members of the Narcotics Bureau, among others, that "the common denominator on numerous, numerous cases where money was missing from scenes" was Diaz. Rosen also stated that "[w]e know that, over the past, [Officer Diaz] has stolen money. We just can't prove it and charge him with a crime." In reference to other cases Diaz had investigated, Rosen opined that "[t]here was a serious credibility issue with [Officer Diaz], so we can't file the case." Although the State Attorney's Office had decided not to prosecute Diaz, the MDPD's Professional Compliance Bureau was still investigating Diaz at the time of the meeting. The statements Rosen made at this meeting constitute the

basis for Diaz's § 1983 defamation claim. In response, Rosen claims that he is entitled to qualified immunity.

We laid out the relevant law pertaining to qualified immunity above and need not restate it here. In *Mikko v. City of Atlanta*, we stated that "[a] prosecutor's most basic duty is to prosecute cases in his jurisdiction on behalf of the State. Related to that duty, prosecutors may also communicate with other law enforcement agencies, officials, or employees about current or potential prosecutions." 857 F.3d 1136, 1143–44 (11th Cir. 2017). Because there remained an ongoing criminal investigation into Diaz at the time of the roll-call meeting, we are bound by *Mikko* to find that Rosen was acting within the scope of his discretionary authority. Rosen's statements to fellow law enforcement officers explaining his decision not to not prosecute Diaz as well as concerns he has over Diaz's credibility as a witness clearly fall within Rosen's discretionary authority as a prosecutor.

Additionally, Diaz has not overcome Rosen's qualified immunity defense as Diaz's allegations do not establish a violation of a clearly established constitutional right. *See Corbitt*, 929 F.3d at 1311. In his second amended complaint, Diaz argues that Rosen's alleged defamatory statements "have irreparably damaged [his] credibility, both as an investigator and as a witness on behalf of the State of Florida." Diaz's claim is that Rosen's statement to law enforcement that Diaz

10

committed a crime deprived him of a liberty interest. However, Diaz's arrest cannot serve as the basis for this claim as Diaz was arrested two months prior to the statements Rosen made. To the extent Diaz asserts his reputational injury constitutes the basis for his claim, this argument is foreclosed by *Rehberg v. Paulk*, 611 F.3d 828 (11th Cir. 2010). In *Rehberg*, we held that "[d]amage to reputation alone is insufficient to state a Fourteenth Amendment due process claim." *Id.* at 852; *see also Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (rejecting the notion that defamation by a government actor that injures one's professional reputation violates due process). Diaz has thus not alleged sufficient facts to overcome Rosen's defense of qualified immunity.

### D. Count 4: Florida Statute § 112.532 Claim Against Rosen

In Count 4 of his second amended complaint, Diaz raises a state law claim under section 112.532 of the Florida Statutes against Rosen for his alleged violations of the Florida Law Enforcement Officers' Bill of Rights. The statute provides law enforcement officers with various rights and privileges when the officer is under investigation by his agency. Section 112.532(3) addresses civil suits brought by officers and provides that a law enforcement officer, such as Diaz, shall have the right to bring a civil claim against any person, group, or corporation "for abridgment of the officer's civil rights arising out of the officer's performance

of official duties." Diaz requests compensatory and punitive damages for Rosen's alleged statutory violations.

However, courts have found that section 112.532 does not create a private right of action for money damages. *See City of Miami v. Cosgrove*, 516 So. 2d 1125, 1127 (Fla. Dist. Ct. App. 1987) (per curiam) (finding that section 112.534 provides the only express remedy for alleged violations of section 112.532, and "[c]learly, Section 112.534 provides only for a suit for an injunction, not a suit for damages"). In *Kamenesh v. City of Miami*, the District Court for the Southern District of Florida found "that the holding in *Cosgrove* was intended to quash all suits for damages under § 112.532," whether against a municipality or a defendant in his individual capacity. 772 F. Supp. 583, 593 (S.D. Fla., 1991) (abrogated on other grounds).

Therefore, because "[t]he sole remedy provided for in § 112.534 is injunctive relief," case law precludes Diaz's claim for money damages against Rosen. *See id.* Count 4 was therefore properly dismissed by the district court.

*E.  Count 5: Negligent Infliction of Emotional Distress Claim Against all Defendants*

Count 5 of Diaz's second amended complaint is a claim for negligent inflection of emotional distress (NIED) against Defendants the County, Fryer, and Rosen. As an initial matter, Diaz has abandoned his NIED claim against Fryer and

Rosen. Diaz only referenced the NIED claim against Fryer in his initial brief and then proceeded to make an argument for an intentional inflection of emotional distress claim under Florida law. *See United States v. Corbett*, 921 F.3d 1032, 1043 (11th Cir. 2019) (finding that a party abandons an issue by failing to raise it prominently and plainly in the arguments section of their initial brief or when it is raised in a perfunctory manner without supporting arguments or authority). Similarly, Diaz's NIED claim against Rosen is abandoned as it is not mentioned at all in his brief and thus not properly presented for appellate review. *See id.* We now turn to Diaz's NIED claim against the County.

In his second amended complaint, Diaz asserts an NIED claim against the County stemming from "[t]he psychological trauma and emotional damage caused by Defendants' scheme to falsely accuse, arrest, and defame Officer Diaz." This trauma led to Diaz being hospitalized with a "stress-related ailment" and caused his family severe emotional distress.

Diaz's state law NIED claim against the County never gains much traction as the allegations in his complaint do not satisfy Florida's impact rule. "In essence, the impact rule requires that before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." *R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995) (noting that allowing recovery for

13

purely emotional distress without an impact requirement "would open the floodgates for fictitious or speculative claims" and would paralyze defendants' ability to defend themselves as they "would not be sure whom they had injured or where"). In *R.J.*, the Florida Supreme Court found that the plaintiff's "intangible, mental injuries"—including hypertension, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and the reasonable expense for medical care—were "insufficient to meet the physical injury required under the impact rule." *Id.* at 364.

So, too, here. Because Diaz alleges only emotional and psychological injuries that arose "as a result of the Defendants' scheme to falsely accuse, arrest, and defame him," and not as a result of any physical impact—as necessitated under Florida law—his NIED claim against the County was barred by the impact rule and thus properly dismissed.

### F. Denial of Leave to Amend Second Amended Complaint

Diaz also appeals the district court's denial of leave to amend his second amended complaint. A district court's denial of a motion for leave to amend is reviewed for abuse of discretion, and we may affirm the district court's ruling on any ground supported by the record. *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015). Diaz did not properly request leave to amend and we

find no merit in Diaz's claim that the district court abused its discretion in denying Diaz leave to amend his complaint for a *third* time.

The Federal Rules of Civil Procedure state that a request for court order must be made by written motion that states with particularity the grounds for seeking the order and the relief sought. Fed. R. Civ. P. 7(b)(1). When the relief sought is leave to amend a complaint, "the plaintiff must set forth the substance of the proposed amendment or attach a copy of the proposed amendment to its motion." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018). Here, Diaz did neither.[1] We therefore find the district court did not abuse its discretion in denying Diaz leave to amend.

## Conclusion

For the foregoing reasons, we affirm the district court's order granting motions to dismiss to defendants Miami-Dade County, Matthew Fryer, and Howard Rosen.

**AFFIRMED.**

---

[1] We also note that Diaz was obviously aware of these requirements given the fact that he had previously filed a proper motion for leave to amend, resulting in the present second amended complaint.

15